[Civ. No. 8254. Third Dist. Nov. 10, 1953.]

RICE BROTHERS, INC. (a Corporation), Respondent, v. GLENS FALLS INDEMNITY COMPANY (a Corporation), Appellant.

McDougall & Fitzwilliam for Appellant.

Hewitt & McBride for Respondent.

VAN DYKE, P. J.—Plaintiff corporation was engaged in the performance of a grading and paving contract in Merced which required the use of a number of dump trucks. It owned and used on the work some 10 or 12 trucks and needed more. It made oral arrangements with one Holloway for the use of two of Holloway's trucks. They were furnished by Holloway, "fully operated and maintained," that is, they went to

the job with drivers, and Holloway paid the wages of the men, paid for the gasoline and oil consumed and for any repairs that might be necessary. Plaintiff paid Holloway $4.66 an hour per truck. One of plaintiff's own trucks driven by its own servant damaged a Holloway truck. Plaintiff had the truck repaired at a cost of $947.71. It filed this action against defendant, a corporation engaged in the business of insuring against public liability. Its complaint alleged that on the day the Holloway truck was damaged it was the insured in such a policy issued by defendant corporation and that under that policy defendant agreed to indemnify plaintiff against any liability, within the limits of the policy, "which might arise against plaintiff in favor of any person or persons who should sustain any damage to property by accident by reason of the ownership, maintenance or use by said plaintiff of a motor vehicle"; that on that day a motor vehicle owned and operated by plaintiff had been so negligently and carelessly driven by plaintiff through its employee that it collided with the Holloway truck, damaging that truck in said amount; that after notice and rejection of claim it had paid the amount of the damage to Holloway and that defendant refused to indemnify it against that loss by repayment of the sum paid out. Defendant insurance company denied that the coverage was as alleged and pleaded that the policy contained an exclusion clause which excluded the loss claimed and was in this language: "This policy does not apply . . ., to injury to or damage of property owned by, rented to, in charge of, or transported by the insured."

The trial court found the allegations of plaintiff's complaint to be true, the allegations of the answer to be untrue and gave judgment for the amount demanded. The defendant has appealed.

The issues tried called for the consideration of two contracts, one written, the other oral. No evidence was introduced concerning the negotiations for and the execution of the written agreement nor was it claimed to be uncertain or ambiguous in its terms. The only part thereof the application of which was in dispute was the exclusion clause. As to the oral agreement between plaintiff-respondent and Holloway the testimony may be narrated as follows:

Jesse L. Rice, an officer of respondent corporation, testified that the agreement with Holloway was oral; that Holloway agreed to furnish two of his own trucks and more of anyone else's he could obtain for that purpose "fully

operated and maintained,'' by which was meant that respondent would pay so much for the truck and Holloway would furnish Holloway's driver, gasoline, oil and repairs; that Holloway hired the driver of the truck which was damaged on the job; that assuming a Holloway driver did not perform his work properly respondent still had no right to discharge him; that there was no difference between the work done by the Holloway trucks and the work being done at the same time by respondent's trucks; that if respondent had been using a Holloway truck in a way that Holloway did not like, he could have stopped the truck; that Holloway got no percentage of respondent's contract price on the job; that Holloway could "quit any time he wanted"; that Holloway had no special part of the work to do with his dump trucks and all the trucks worked together. All material hauled by a truck was dumped into a moving spreader box, and the trucks dumped in turn as they came up to the box; that Holloway was not obligated to permit his trucks to be used away from the job; that the Holloway trucks were there for use in doing whatever was necessary to be done on the job and this work was in charge of respondent's superintendent; that Holloway's drivers, as well as respondent's drivers, knew the job and were experienced men, so that when they went on the job they knew where they were going to haul from and where they were going to haul to and needed no instructions on those lines, but respondent's superintendent had the right to direct respondent's truck drivers who were under his complete control, whereas Holloway's drivers were not; that Holloway's drivers were paid once a month; that respondent carried compensation insurance on Holloway's drivers, but charged the cost back to Holloway; that if a Holloway driver "refused to do the work" respondent would tell Holloway neither the driver nor the truck was wanted any more, but that respondent could not discharge a driver off a Holloway truck; that Holloway did not agree to furnish trucks for any specified period; that Holloway trucks were at all times operated by Holloway drivers who were paid by him; that Holloway could do anything he wanted with his trucks at any time he wanted to, but would get no pay except when his trucks were working on the job; that Holloway had nothing at all to say about the manner or method of doing the work respondent was under contract to perform, though Holloway trucks were actually used in carrying out the contract. No witness other than Rice testified as to the agreement between respondent and Holloway.

The trial court had to determine whether under the contract between respondent and Holloway the damaged Holloway truck was, when the accident happened, owned by, rented to, in charge of, or being transported by respondent. Admittedly it was neither owned by nor being transported by respondent. In determining whether it was rented to or in charge of respondent the trial court was obliged to evaluate the oral contract between respondent and Holloway, and this presented to the trial court primarily a question of fact. The trial court impliedly found that the Holloway truck was neither rented to nor in charge of respondent and therefore that indemnity against respondent's liability for the damage done to it was within the coverage afforded by appellant's policy and without the embrace of the exclusions relied upon by appellant. We think the evidence affords substantial support for the court's conclusions.

A rental of personal property or, as it is phrased in our Civil Code, the "hiring" thereof "is a contract by which one gives to another the temporary possession and use of property, other than money, for reward, and the latter agrees to return the same to the former at a future time." (§ 1925.) From the narrated testimony the trial court could conclude that under the contract between respondent and Holloway the parties did not intend to give, and did not give, to respondent any possession of the Holloway truck, nor any use of that truck apart from the services rendered by the driver and the truck in combination; that respondent could not break up this combination and be left with a right either to the possession or the use of the truck. The trial court could also conclude that the contract between respondent and Holloway would not put the truck into respondent's charge and on the contrary that Holloway had purposely reserved to himself complete possession and charge of the truck at all times.

A case from without this jurisdiction is probably closer on its facts than any other that has come to our attention. We refer to *Roadbuilders' Hauling Co.* v. *Constitution Indem. Co.*, 165 S.C. 363 [163 S.E. 837, 838], where an insured allowed a construction company to use his truck and driver at an hourly rate. While so being used a construction company employee was injured while riding on the truck with the permission of its driver. Responding to a contention that the incident was covered by an exclusionary clause in the policy which withheld coverage if the vehicle was being rented, the court said: "To 'rent' is to secure the possession and use of

a thing for a consideration or hire. . . . 'By the contract of hire, the hirer acquires a qualified property in the thing hired.' . . . The evidence failed to show as a necessary inference that the automobile in question was rented or let out by the plaintiff. It was used by plaintiff in hauling for hire material to be used in constructing a highway; but in so doing plaintiff used its own servant, and never parted with the custody, possession, or management of the automobile. The evidence showed no bailment, 'renting,' or 'letting out' within the meaning of the policy.''

In *Entremont* v. *Whitsell*, 13 Cal.2d 290 [89 P.2d 892], a contract was made between Entremont and the Department of Public Works whereby he agreed to ''rent'' three dump trucks, with drivers, to the department to be used as needed for carrying road building or excavated material in the department's work of repairing highways. A question arose as to whether in fact the agreement constituted a renting of the equipment and responsive to that the Supreme Court said, at page 295:

''Although the solution of the problem is not entirely free from doubt, it is our opinion that this contract did not constitute the renting or leasing of equipment to the department but was a contract calling for the transportation of property by motor vehicle by Entremont. This conclusion follows from the fact that under the contract the possession and control of the trucks and the operators thereof did not pass to the department—the operators did not become the employees of the department—but such possession and control remained in Entremont. The chief. characteristic of a renting or a leasing is the giving up of possession to the hirer, so that the hirer and not the owner uses and controls the rented property. (Civ. Code, secs. 1925, 1955.) The record is clear that the only supervision exercised by the department over the operators of the trucks was to direct them where to load and unload the material hauled, when to go on or leave the job, and to inform the operators whether the load should be dumped or spread. The department had no power to discharge the drivers—that power, and the power of selection, rested in Entremont. That is a factor of some importance in ascertaining whether Entremont or the department controlled the operators. (*Lowell* v. *Harris*, 24 Cal.App.2d 70 [74 Pac.2d 551].) Moreover, the provisions of the contract indicate that it was not the intention of the parties that the department should exercise exclusive control over the operators. The

contract required Entremont to keep the trucks in repair; to pay all expenses incidental thereto; to supply all oil, gas and other materials necessary for their operation; to carry compensation insurance on the drivers, and expressly provided the operators were the employees of Entremont.''

There were various factors in the Entremont case which were recited by that court in its opinion as giving further support to the finding of the Public Utilities Commission under review, that the arrangement between the parties there did not result in a rental of the trucks involved; but nonetheless the foregoing statements of the Supreme Court are most persuasive that the trial court here, in declaring the judgment appealed from, was substantially supported by the evidence.

Other matters are discussed in the briefs but the foregoing makes it unnecessary to discuss them.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.