### DONALD KNOTT v. ROGER SOLTAU. BITUMINOUS CASUALTY CORPORATION, THIRD-PARTY DEFENDANT.

166 N. W. (2d) 91.

March 7, 1969—No. 41242.

*Robb, Robb & Van Eps* and *Douglas Dale Reid, Jr.,* for appellant.
*Meagher, Geer, Markham & Anderson, G. T. MacIntosh II, Robert M. Frisbee,* and *O. C. Adamson II,* for defendant and third-party plaintiff respondent.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

Plaintiff, Donald Knott, entered into an oral contract with Northwest Bituminous Company, Inc., (Northwest) whereby he was to provide a dump truck and driver for $10 per hour to haul hot mix from the Northwest plant in Savage to a job site at Metropolitan Stadium in Bloomington. Knott was to pay for his own gas, oil, tires, and repairs; handle the withholding and social security taxes for himself or whomever he hired to drive the truck; and was free to quit at any time he chose. He testified that if he was asked to do anything he thought would damage his truck he could refuse to do it, but if he believed it would not endanger himself or his truck, he would do as Northwest directed.

On October 29, 1966, Knott contacted Northwest and was informed that he could haul hot mix from Savage to Bloomington. He was free to refuse the job, but chose to accept it. No further directions were given him by Northwest and apparently he simply did the same thing being done by Northwest's own trucks and drivers. Knott was to be paid for only those hours his truck was actually in operation; that is, any time spent in changing a tire or making other repairs was not compensable by Northwest.

On the day in question, while Knott's truck was stopped on the stadium job site waiting in line to unload, a truck owned by Northwest and driven by defendant Roger Soltau, Northwest's employee, backed into it. Knott was operating his own truck at the time. He brought this action against Soltau to recover for property damage to and loss of the use of his truck.

Soltau brought a third-party action against Bituminous Casualty Corporation (Bituminous), Northwest's liability insurance carrier,

seeking indemnity for any damages he would be required to pay Knott. It is clear that Soltau is covered under the Northwest policy. However, Bituminous denied liability on the grounds that Knott's truck was "in charge of" Northwest within the meaning of the exclusionary clause in the policy.[1]

A consent judgment was entered in favor of Knott against Soltau for $1,281.42 which all parties stipulated were Knott's actual damages. The issue of the liability of Bituminous under the policy of insurance was then tried before the district court without a jury. The trial court found that Knott's truck was not "rented to or in charge of the insured [Northwest]" as that phrase is used in the Bituminous policy. It concluded, in accordance with its findings, that Knott was entitled to judgment against Soltau; that Soltau was entitled to indemnity from Bituminous for the amount of Knott's judgment against him; and that Bituminous was obligated to defend Soltau under the terms of its policy issued to Northwest.

Judgment was entered in favor of Soltau in the amount of $1,281.42 plus $865.54 for reasonable costs and attorneys' fees, since Bituminous failed in its obligation to defend the original action. The total judgment against Bituminous was for $2,146.96.

Bituminous raises a single issue in this appeal: Whether as a matter of law the truck owned and driven by Knott was "in charge of" Northwest within the meaning of the exclusionary clause in its insurance policy.

The term "in charge of" as used in policies of insurance has not previously been construed by this court. Bituminous relies on Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695. In that case an action for death by wrongful act was brought against Danens after Lindbery was killed when a truck owned by Danens and driven by its employee backed into him. Lindbery had been hauling

---

[1] Under Exclusion (i) the policy states: "This policy does not apply: * * * under Coverage C [property damage liability], to injury to or destruction of property owned or transported by the insured, or property rented to or *in charge of* the insured * * * [exceptions not material here]." (Italics supplied.)

dirt for Danens in his own truck under an oral contract of the type involved in the present case. This court held that the relationship of employee-employer rather than that of independent contractor existed where decedent Lindbery's principal vocation was that of a police officer, he supplemented his income by driving a dump truck for Danens, was paid on an hourly basis, and could quit or be discharged at will. That holding was made notwithstanding the fact that Lindbery operated and repaired his own equipment at his own expense, little supervision or control over his performance was required, and he was not treated as an employee by Danens on its company books.

We also said in the Lindbery case that under either the "right of control" test which we have consistently applied or the "nature of the work" test advocated by some, Lindbery was an employee of Danens at the time of his death and therefore the remedy available was under the Workmen's Compensation Act. In so holding, this court pointed to several factors affecting our decision: The lack of control by Danens was due to the fact that the job required little supervision; the work was of the same type done by drivers who were full-time Danens' employees, not that usually done by a specialist; Lindbery did not bid on a fixed-price contract in the usual manner of contractors; and the oral contract was not for a specific duration, job, or quantity of work.

It is the contention of Bituminous that Knott, like Lindbery, was an employee; and that since he was an employee under the control of Northwest it follows that his truck was also under its control.

Soltau takes the position, which the trial court adopted, that Lindbery is inapplicable. Essentially his claim is that Lindbery's determination of the *status of the driver* does not control where the issue is *the status of the vehicle*. Soltau further contends that Lindbery was solely concerned with a determination of the driver's status under the Workmen's Compensation Act.

While Lindbery was an action for death by wrongful act and not a claim for workmen's compensation, the opinion indicated that the compensation law did influence the outcome. The court there said (266 Minn. 424, 123 N. W. [2d] 698):

"Most of the decisions which have defined the relationship we here determine stem from claims made under the Workmen's Compensation Act. We recognize that they have been influenced by the policy of the legislature and the courts to give the act a broad, liberal construction appropriate in dealing with remedial legislation. However, under a given set of facts we cannot justify inconsistent conclusions simply because a common-law action may be involved in one case and a workmen's compensation claim in another."

In support of his position, Soltau cites several cases from other jurisdictions which have considered the term "in charge of" in an insurance context. The consensus of all these cases is that in order for property to be "in charge of" an insured, the insured must have the right to exercise dominion or control over it. Great American Ind. Co. v. Saltzman (8 Cir.) 213 F. (2d) 743, 748; Cohen & Powell, Inc. v. Great American Ind. Co. 127 Conn. 257, 259, 16 A. (2d) 354, 355, 131 A. L. R. 1102, 1104; Sky v. Keystone Mutual Cas. Co. 150 Pa. Super. 613, 618, 29 A. (2d) 230, 233 (construing insurance statute with exclusionary provision); Maryland Cas. Co. v. Golden Jersey Creamery (Tex. Civ. App.) 389 S. W. (2d) 701, 703.

Since the Lindbery case did not determine Danens' rights as to Lindbery's truck, it should not control as to Northwest's rights over Knott's truck.

We think that Lindbery has been validly distinguished. While Knott granted Northwest a degree of control over his actions when he agreed to haul the hot mix, he did not relinquish his personal control over his truck. Any and all directions as to its use which Northwest might choose to give were subject to his veto. No one could drive the truck unless Knott gave his permission. The fact that Knott would only be paid while the truck was operating indicates that the control of when, where, and how it was to be used was to remain in his hands.

Soltau cites Rice Bros. Inc. v. Glens Falls Ind. Co. 121 Cal. App. (2d) 206, 263 P. (2d) 39, as "on all fours" with the present situation, and the trial court was of the same opinion. We find the two cases to be very closely analogous. The only apparent difference between them is

30

that in Rice the court stated that the evidence showed that the insured could not "fire" a driver off his truck, but could only indicate to the truckowner that it no longer wanted the truck or driver. Here there is no testimony on that point. Although Lindbery may cast some doubt on the inability of Northwest to "fire" a driver (other than Knott) off Knott's truck, the difference, if it is in fact a difference, does not seem to be material. We feel that the holding of the Rice case, that the evidence sustained the trial court's conclusion that the truck was not "in charge of" the insured, is equally applicable to the facts of the present case.

It should be noted that the issue of whether the provisions of a contract give a party dominion or control over the property of another is a matter of evaluating the contract, and this is primarily a question of fact. We hold, under the record here, that the truck driven by Knott was not "in charge of" Northwest within the meaning of the exclusionary clause of the insurance policy.

Affirmed.