INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, Plaintiff,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY, a Wisconsin corporation, Defendant.

Civ. A. No. 35071.

United States District Court,
E. D. Michigan, S. D.

Feb. 28, 1973.

G. Cameron Buchanan, Detroit, Mich., for plaintiff.

Harold F. Klute, Niles, Mich., for defendant.

## MEMORANDUM OPINION

### Facts

PHILIP PRATT, District Judge.

This action is for Declaratory Judgment brought by Insurance Company of North America (I.N.A.) against North-

western National Insurance Company (Northwestern) which arose as a result of the destruction of a certain crane owned by L. W. Connelly & Sons, Inc. (Connelly). Jurisdiction is based on diversity of citizenship.

At the time of the loss to the crane, both I.N.A. and Northwestern had liability policies in effect insuring Precast Schokbeton, Inc. (Precast), a firm now known as Cork Street, Inc. Precast had secured the services of the Connelly crane for use at a construction project in Ann Arbor, Michigan. The suit was instituted for Declaratory Judgment to construe the two policies and to determine the liability of each party under the contracts for the damage to the Connelly crane.

The case is now before the Court by agreement of the parties for decision on the basis of pleadings, briefs, stipulation of facts and two depositions. Set out below is the stipulation of facts.

### Stipulation of Facts

"It is hereby stipulated by and between the parties by their respective counsel that this Honorable Court may accept the Statement hereinafter agreed upon by all parties involved as a true Statement of Facts, binding on each of the parties and on the basis of the same a decision may be made and a Judgment entered thereon—determining which insurer was the insurer covering the damaged property at the time of the loss and liable for damages, the amount of which is not in dispute being One Hundred Thousand and no/100 ($100,000.00) plus interest and costs.

"The Stipulation designates the language of the insurance contracts, each insurer deems pertinent but the entire policies are attached, made a part of this Stipulation, and any part may be used by the Court in making a determination of the issue presented by this Stipulation.

"Jeffress-Dyer, Inc., a Michigan Corporation, contracted with the Board of Regents of the University of Michigan for the construction of a multi-story parking garage in Ann Arbor, Michigan. Thereafter Jeffress-Dyer, Inc., subcontracted a part of the work to Precast Schokbeton, Inc., now known as Cork Street, a Michigan Corporation, as per copy of the contract attached and marked 'Exhibit A' for greater particularity.

"The work of Cork Street required the use of a crane in erecting pillars on the construction project. For years under verbal contracts L. W. Connelly & Sons, Inc., furnished cranes to Cork Street on an agreed hourly charge for crane and operator.

"L. W. Connelly & Sons, Inc., furnished a crane and operator to Cork Street for the duration of Cork Street's work on the Jeffress-Dyer— University of Michigan contract for the agreed hourly charge.

"Work for each day ceased at 4:30 P.M. The fee was forty and no/100 ($40.00) Dollars per hour while the crane was in use. At the end of each day Cork Street signed a memo disclosing the hours that the crane was in operation on a form described as 'rental contract', a copy of which is attached hereto and marked 'Exhibit B'.

"On May 19, 1966 after work hours, due to a series of disputed causes, the pillars previously erected by Cork Street fell, struck and damaged the Connelly crane.

"The loss occurred during the coverage period of each of the insurers, Insurance Company of North America and Northwestern National Insurance Company, with both policies having been written by the same Agency.

"The Insurance Company of North America policy under 'Insuring Agreements' provides, (Page 1 of Policy):

"'II. Property Damage Liability
TO PAY on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the

loss of use thereof, caused by an occurrence.'

Under 'EXCLUSIONS' (Page 3):

" 'This policy does not apply:

\*   \*   \*   \*   \*   \*

(e) to injury or destruction of (1) property owned or occupied by or rented to the insured, or (2) . . . property used by the insured, or (3) . . . (iii) . . . property in the care, custody, or control of the insured or property as to which the insured for any purpose is exercising physical control.' [1]

"The Northwestern National Insurance Company policy under 'CONDITIONS'

" '3. It is expressly agreed that this insurance shall not cover to the extent of any other insurance whether prior, simultaneous or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance.'

and under the COVERAGE AGREEMENT BY ENDORSEMENT:

" 'It is understood and agreed that the attached is substituted for the multigraphed form which now forms part of this policy:—

CONTRACTORS EQUIPMENT FLOATER

This policy covers the legal and/or assumed liability of the assured, in respect of loss or damage to rented items of contractors equipment belonging to others, subject to a limit of liability of not exceeding $150,000. any one item and not exceeding $300,000. in any one loss, disaster or casualty involving more than one item.' "

Before proceeding with a discussion of the evidence presented in the two depositions, I.N.A.'s objection to consideration of further evidence should be noted. I.N.A. takes the position that the parties had agreed that the Court will make its decision on the basis of this statement of facts without further evidence. Northwestern, conversely, argues that the stipulation was not intended to be and clearly is not fully dispositive of the factual issues in the case. While still asserting its objection to further evidence, I.N.A. has agreed to participate in the depositions of two Precast employees, William F. Daily, the person in charge of erecting the columns and pillars, and Robert A. Matthews, president of Precast.

To resolve this question, the Court must bear in mind the duty it is asked to perform—namely, determine liability for this loss. The issue of liability in this case turns on an interpretation of the contractual relationship between Precast and Connelly. The facts presented in the stipulation, however, relate few details of this relationship. Essentially the stipulation is limited to stating that Connelly furnished a crane with operator to Precast under a verbal agreement for a fee of $40 per hour.

■ The Court, therefore, concludes that the stipulation by itself presents insufficient facts for the Court to decide this controversy and will consider the aforementioned depositional evidence. Additionally, due process considerations would require any waiver of rights by Northwestern to be explicit.

Precast had a standing verbal agreement with Connelly under which Connelly would furnish cranes at a predetermined hourly rate, depending upon the size of the crane ordered. Accordingly, whenever Precast needed a crane in the Detroit area, Connelly was informed that a crane of a certain capacity was needed. Connelly would deliver a crane

---

[1]. This paragraph is inaccurately condensed in the stipulation. Since the parties have agreed that the Court may use any part of the insurance contracts, this paragraph has been redrafted according to the language used in the I.N.A. policy.

to the construction site with a two man crew consisting of an operator and oiler.

Since the boom was unassembled when delivered to the site, Precast Ironworkers, whose union had jurisdiction for boom assembly, assembled the boom under the direction of the operator. The operator and oiler were Connelly employees with their wages, employment taxes, and workmen's compensation insurance paid by Connelly.

In the instant case, Connelly was engaged to provide a crane needed by Precast to lift 20 ton concrete columns and singles into place for the East Medical Center Parking Structure at the University of Michigan under a subcontract from Jeffress-Dyer, Inc. Precast, being responsible for the erection project, directed the emplacement procedure and determined the order in which the columns were to be erected. Although acting under the general supervision of Precast, the crane operator was responsible for deciding how each lift was to be made and for controlling all the instruments and levers in the crane necessary to make a lift. In this respect, Connelly, by its employees, retained physical control over the equipment at all times.

At the end of each work day, Precast would execute a document, designated "Rental Contract" and supplied by Connelly, to record the number of hours the crane had been in use that day. Before leaving the site, the operator would secure the crane for the night.

Under the terms of the Precast-Connelly agreement, Connelly was entirely responsible for service and maintenance on the crane. Additionally, Connelly had the right to furnish any crane adequate to perform the job. The agreement further gave Connelly the right to substitute cranes at projects in progress or to remove a crane from the construction site at night or on weekends to perform other jobs. Finally, each party had the right to terminate the arrangement at will.

### Conclusions of Law

It is important to note at the outset that only the rights and liabilities of I. N.A. and Northwestern, vis-a-vis each other, can be determined in this Declaratory Judgment action.[2] The Court does not, and indeed cannot, here make binding conclusions with respect to other parties. Specifically, no determination is made as to any ultimate liability of either I.N.A. or Northwestern to the insured arising from this loss to the Connelly crane.

Two insurance contracts providing liability coverage to Precast have been submitted to the Court for interpretation and construction. The I.N.A. policy is a general liability contract covering any liability which the insured might incur except for certain exclusions listed in the policy. The Northwestern contract, on the other hand, is narrowly drawn covering (insofar as is pertinent herein) only liability to Precast resulting from loss or damage to rented contractor's equipment. It appears that the Northwestern policy was written for the purpose of filling a gap in the I.N.A. coverage created by one of the exclusions— "property . . . rented to the insured."

Although the parties have presented arguments with respect to each of the exclusions in the I.N.A. policy, the fact that the Northwestern policy covers only *rented* contractor's equipment must necessarily limit inquiry for purposes of this action to the "property *rented* to the insured" exclusion in the I.N.A. contract. The issue of Northwestern's liability for this loss turns entirely upon a determination whether the Connelly crane was "rented" to Precast.

I.N.A., of course, takes the position that the arrangement between Precast and Connelly constituted a rental contract while Northwestern argues

---

**2.** All other party-defendants have been dismissed.

otherwise.[3] In order to decide this issue the Court must interpret the meaning of the term "rented" as used in each insurance contract under Michigan law.[4] It is a general rule in Michigan that insurance contracts, particularly exclusions, are to be construed in favor of the insured. Where, however, the language is clear and unambiguous, no construction is required, and a Court must apply the ordinary and usual meaning of the words. Cottrill v. Michigan Hospital Service, 359 Mich. 472, 102 N.W.2d 179 (1960); Sump v. St. Paul Insurance Company, 21 Mich.App. 160, 175 N.W.2d 44 (1970). Since any difficulty with the term "rented" does not lie with an inherent ambiguity, but rather with its application to this particular fact situation, it is only necessary to determine the ordinary meaning of that term. Moreover, no evidence has been presented to the Court indicating that either the two insurance companies or Precast, the insured, contemplated any meaning for the word "rented" other than its normal meaning. Specifically, there is no indication that the Precast-Connelly arrangement was intended to be included within its meaning by the parties to the insurance policies.[5]

Neither the parties, nor the Court, have found any reported Michigan cases ruling on rented property exclusions in liability insurance policies or on rented property floater contracts. Thus, this Court must determine the position Michigan courts would likely adopt in interpreting similar provisions.[6]

Defendant Northwestern argues in its brief that Connelly was a subcontractor to Precast and for that reason the crane could not have been "rented" to Precast. This view is most difficult to accept because so many of the indicia of subcontract are lacking from this relationship —an hourly rate of compensation, a power to terminate the relationship at will, and a lack of control by Connelly over the erection project (as opposed to control of the crane itself).

A rejection of the subcontract theory, however, does not necessarily lead to the conclusion that the Connelly crane was rented to Precast. There have been three reported cases construing similar rented property exclusions in other jurisdictions. Rice Bros. Inc. v. Glens Falls Indemnity Co., 121 Cal.App.2d 206 263 P.2d 39 (1953); Knott v. Soltan, 283 Minn. 25, 166 N.W.2d 91 (1969); Traders and General Insurance Company v. Edwards, 216 F.2d 441 (10th Cir. 1954), cert. den. 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744. Rice Bros. and Knott involved a question whether dump trucks which were furnished with operators were "rented" to the insured, while Edwards dealt with an issue whether an oil rig was "rented" to the insured. In the

---

3. In Paragraph 4 of Northwestern's Answer, defendant states "it admits that PRECAST SCHOKBETON, INC. did rent from L. W. CONNELLY & SON, INC. for the construction job in Ann Arbor, Michigan, crane and operator time on an indefinite hourly basis." The Court does not hold this to be a judicial admission against Northwestern for the following three reasons. First, the statement speaks only of crane and operator *time.* Second, Paragraph 5 of the Answer denies that the crane was rented. And finally, Northwestern has continuously contested this issue in briefs and argument before the Court.

4. This Court, sitting in diversity, must apply Michigan law on this and all other substantive legal issues. Erie Railroad Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188 (1938).

5. I.N.A. takes the position that the fact Connelly recorded the hours which the crane was in use each day on a document entitled "Rental Contract" (See Stipulation Exhibit B) is in and of itself determinative in this case. The argument is without merit because whatever label may have appeared on the time slips is not binding nor is it relevant unless it is shown that the same meaning for the term was contemplated by the parties to the insurance contracts here in issue; namely, Precast, I.N.A. and Northwestern. There has been no such showing.

6. See Filley v. Kickhoff Publishing Company, 454 F.2d 1288 (6th Cir. 1972); Andrew v. Bendix Corporation, 452 F.2d 961 (6th Cir. 1971); and Royal Indemnity Company v. Clingan, 364 F.2d 154 (6th Cir. 1966).

"dump truck" cases, the truck owner was responsible for maintenance of the trucks and for wages, employment taxes, and workmen's compensation insurance for the drivers. In *Edwards* the oil rig owner was similarly responsible for maintenance of the equipment and compensation for his employees who operated the rig. Because the relationship in the present case between Connelly and Precast was strikingly similar, the following quotation in the *Rice Bros.* opinion, taken from Entremont v. Whitsell, 13 Cal.2d 290, 89 P.2d 392 (1939), is quite convincing:

> ". . . The chief characteristic of a renting or a leasing is the giving up of possession to the hirer, so that the hirer and not the owner uses and controls the rented property. Civ.Code, §§ 1925, 1955. The record is clear that the only supervision exercised by the department over the operators of the trucks was to direct them where to load and unload the material hauled, when to go on or leave the job, and to inform the operators whether the load should be dumped or spread. The department had no power to discharge the drivers—that power, and the power of selection, rested in Entremont. That is a factor of some importance in ascertaining whether Entremont or the department controlled the operators. . . . The contract required Entremont to keep the trucks in repair; to pay all expenses incident thereto; to supply all oil, gas and other materials necessary for their operation; to carry compensation insurance on the drivers, and expressly provided the operators were employees of Entremont." 121 Cal.App.2d 206, 263 P.2d 39, 41–42.

The reasoning of the California Court in *Rice Bros.* was found to be persuasive by the Minnesota Court in *Knott.* Similarly the Tenth Circuit held that the oil rig there in question was not rented to the insured.

█ This Court believes that the "dump truck" cases are essentially indistinguishable from the case at bar. The agreement between Precast and Connelly is almost identical to the contracts in *Rice Bros.* and *Knott.* In each case, the equipment was operated by an employee of the owner, compensation was by the hour, either party could terminate the contract at will, and the owner had the right to substitute equipment at any time. The Court, therefore, believes the Michigan Supreme Court would adopt the view under this fact situation that the Connelly crane was not "rented" to Precast under the ordinary meaning of the word.

The Michigan case of Godfrey v. City of Flint, 284 Mich. 291, 295–296, 279 N. W. 516, 517 (1938), supports this conclusion. Since a rental of chattels normally constitutes a bailment for the benefits of both parties, the following definition set out in *Godfrey* is helpful.

> "Bailment for the benefit of both parties thereto has been defined as one wherein a person gives to another the temporary use and possession of property, other than money, for a reward, the latter agreeing to return the same to the former at a future time." 8 C. J.S. Bailments p. 243, § 8.

The facts in the present case do not fit within this definition because Precast never had "possession" of the property. The Connelly crew maintained physical control over the crane at all times.[7] Since the focus in *Rice Bros.* was a lack of possession by the insured, the Michigan view of bailment for the benefit of both parties appears perfectly consistent with the above conclusion that the crane here was not "rented".

Any argument that Precast had possession of the crane is not substantial. It is true that Precast directed the erection project and the crane operator performed his duties at Precast's request. The determinative factor, however, is that the operator was fully responsible

---

7. Even when the Precast Ironworkers assembled the boom, they worked under the direct supervision and control of the crane operator.

**556**

for positioning the crane to make each lift and for raising and lowering the boom necessary to emplace the concrete columns. There is no question that the operator and oiler remained Connelly employees while at the Precast site because Connelly paid their wages, employment taxes, and workmen's compensation insurance. Moreover, the additional facts that Connelly was responsible for securing the crane at night and that it had the option to substitute other cranes or remove a crane after work hours also clearly indicates that Connelly retained exclusive possession of the equipment.

The Court, therefore, holds that the Connelly crane was not "rented" to Precast within the meaning of that term as used in both the I.N.A. and Northwestern insurance policies. Judgment may enter in accordance with the foregoing.