665 P.2d 1011

**CITY OF PHOENIX, a municipal corporation, Plaintiff-Appellee,**

v.

**BENTLEY–DILLE GRADALL RENTALS, INC., an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 5459.**

Court of Appeals of Arizona, Division 1, Department B.

March 1, 1983.

Rehearing Denied May 2, 1983.

Review Denied June 22, 1983.

Carmichael, McClue & Powell, P.C. by J. Clayton Berger, Claudia Kroman, Phoenix, for defendant-appellant.

Andy Baumert, City Atty. by Philip M. Haggerty, Asst. City Atty., Phoenix, for plaintiff-appellee.

## OPINION

GRANT, Judge.

The question presented in this case is whether the activities of appellant, who provided machines known as Gradalls with operators to various construction projects, were contracting or rental of equipment for purposes of the transaction privilege tax. We find the activity was contracting and therefore reverse the trial court.

The City of Phoenix instituted this lawsuit to collect $12,516.73 in unpaid transaction privilege taxes, which were assessed against Bentley-Dille Gradall Rentals, Inc., appellant, for the period covering May, 1974 through May, 1977. The issues presented to the trial court were:

1) Whether the activities of appellant constituted contracting or equipment rental for purposes of the Transaction Privilege Tax;

2) If such activities did constitute the rental of equipment, whether appellant was entitled to deduct direct labor expenses from gross rentals before computing the amount of Transaction Privilege Tax due; and

3) Whether the penalty and interest in the amount of $1,396.92 and $1,325.17 respectively, originally assessed and then waived by the City Auditor should be reinstated by the trial court.

The trial court found that the activities of appellant were equipment rental, but that appellant was entitled to deduct direct labor costs from gross revenues before computing the amount of transaction privilege tax due. In addition, the trial court reinstated the assessed penalty and interest previously waived by the Phoenix City Auditor. Final judgment in the amount of $13,526.79 was entered on April 28, 1980. Appeal was taken from the decision of the trial court on May 27, 1980.

Bentley-Dille Gradall Rentals, Inc., appellant, is an Arizona corporation engaged in the construction business. The income which is the subject of this dispute, involved receipts from hourly charges for the use of machines known as Gradalls, provided by appellant to various construction projects. The Gradall is a highly sophisticated piece of equipment which can do a variety of excavation jobs as well as rip up concrete, remove trees and do some sloping. During the years in question, appellant owned seven of these machines and employed five drivers on a regular basis.

A general contractor who needed excavation work performed would contact appellant. Either Don Dille, President, or Bob

Bentley, Vice-President of the corporation, would go out to the job site, look at the job conditions as well as the blueprints for the job, and determine the size and number of machines needed for the particular job. Appellant would thereafter dispatch the Gradall with an operator and oiler to the job site. The operator would complete the job according to the specifications given appellant by the general contractor.

If this activity of appellant is held to be contracting, the transaction privilege tax must be paid to the jurisdiction where the contracting activity or job site is located. If the activity is rental of equipment, the tax is collected by the jurisdiction where the equipment rental company is located. Appellant has its headquarters in Phoenix, Arizona, and performs jobs in different locations throughout Maricopa County and the state. It treated all of its activities as contracting and paid all applicable transaction privilege taxes it believed were due to the various jurisdictions where the jobs were performed.

Appellant complains that the City of Phoenix has no written guidelines to determine the nature of its activity. The city tax auditor testified at trial that the criteria he used to determine if an activity was contracting was the existence of a formal written contract. He testified that the activities in question here were designated as renting of equipment because there were only invoices in which the use of equipment was billed at an hourly rate as opposed to formal written contract for these activities. Appellant argues that this criteria to determine the nature of the activity is irrelevant.

We note first of all that the facts in this matter are virtually undisputed. The trial court decision determining the nature of the activity involved herein is one of law based on these undisputed facts. We will therefore review the decision of the trial court to determine if, as a matter of law, the nature of appellant's activities is rental or contracting. *See State Tax Commission v. Peck,* 106 Ariz. 394, 476 P.2d 849 (1970).

The Phoenix City Code, § 14–1, defines "Contractor" as follows:

A person who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement . . . The term "contractor" includes subcontractors, specialty contractors, developers and speculative builders.

Appellant points out that there is nothing in the above definition which requires a written formal contract prior to accepting a job in order to be considered a contractor.

Neither the City Code nor any of the city's regulations define "equipment rental," or "leasing." We must therefore be guided by the ordinary meaning of the words. *See State Tax Commission v. Peck, supra.* Our supreme court in *Peck* looked to Webster's Third International Dictionary for a definition of the verb "to rent" as "(1) to take and hold under an agreement to pay rent," or "(2) to obtain the possession and use of a place or article for rent." 106 Ariz. at 396, 476 P.2d at 851.

Research on this issue has revealed an Alabama Appeals case, *State v. Steel City Crane Rental, Inc.,* 345 So.2d 1371 (Ala.App. 1977) with a very similar fact situation. In that case, the taxpayer was in the business of providing large cranes with operators to the construction industry. The court held that this activity was not a lease or rental of tangible personal property within the meaning of the lease tax statute. The court observed that the statute defined leasing or rental as a transaction where the person who owns or controls the possession of tangible personal property permits another person to have the possession or use thereof for a consideration. Thus, the principal characteristic of a rental or lease is the giving up of possession to the lessee so that he, as opposed to the lessor, exercises

control over and uses the leased or rented property.

The court found insufficient relinquishment of control in that the operators were the employees of the taxpayers, that all fuel, maintenance, and repairs on the cranes were performed by the taxpayers, that the operator of the crane determined where and how the cranes were to operate and was in physical control of the crane at all times. The court further found that the only function the "lessee" performed over the operation of the crane and its operator was an overall coordination of the job much like a general contractor would coordinate subcontractors. The court cited several cases in which the furnishing of equipment (cars, trucks, cranes, etc.) with operators at an hourly rate was determined not to be rentals within the meaning of various provisions of insurance policies. *See, e.g., Rice Bros., Inc. v. Glens Falls Indemnity Co.,* 121 Cal. App.2d 206, 263 P.2d 39 (1953); *Ins. Co. of N. America v. Northwestern Nat'l Ins. Co.,* 371 F.Supp. 550 (D.Mich.1973), *aff'd* 494 F.2d 1192 (6th Cir.1974). *See also* Annot., 2 A.L.R.4th 859, 909 (1980).

The record in the case at bar indicates that the operators of the Gradalls were employees of Bentley-Dille, that the operators were in physical control of the Gradalls at all times, that Mr. Dille or Mr. Bentley would go to the construction site and determine what size Gradall was needed, and that it was Bentley-Dille's responsibility to correct mistakes made by the operators. We hold as a matter of law that appellant did not give up possession and control of the Gradalls when it provided them to various construction projects with operators and thus, such activity was not "renting" within the meaning of the transaction privilege tax.

Because of our resolution of this case, the penalty and interest reimposed by the trial court must necessarily fall.

For the foregoing reasons, the decision of the trial court is reversed.

FROEB, P.J., and GREER, J., concur.