[No. A029558. First Dist., Div. Three. June 24, 1986.]

NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY,
Plaintiff and Respondent, v.
COASTAL RESCUE SYSTEMS CORPORATION et al.,
Defendants and Appellants.

764

## COUNSEL

Laurence K. Sawyer, Janis H. Grattan, Noreen M. Evans, Matthew LeBlanc, O'Brien, Sawyer, Watters & Davis, and O'Brien, Watters, Davis, Malisch & Piasta for Defendants and Appellants.

Bruce D. Celebrezze, Douglas M. Moore, Jr., and Sedgwick, Detert, Moran & Arnold for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Northbrook Excess and Surplus Insurance Company (Northbrook) filed an action for declaratory relief against Coastal Rescue Systems Corporation (Coastal), Larry Gibson (Gibson), Rob MacLeod (MacLeod) and Dennis Caywood (Caywood). Northbrook sought a judicial declaration that the insurance policy, issued by Northbrook to Coastal, Gibson and MacLeod, provides no coverage for injuries suffered by Caywood or any other person as a result of an accident which occurred on February 3, 1983, and further that it had no duty to defend Coastal, Gibson and MacLeod against Caywood's action for personal injuries or any related action. With a reservation of rights, Northbrook defended Coastal, Gibson and MacLeod in the superior court action filed by Caywood.

At the trial on the declaratory relief action brought by Northbrook, evidence consisted of the insurance policy and the deposition testimony of Gibson and MacLeod. In its order, the trial court found that an exclusion clause contained in the policy applies and that the policy did not provide insurance coverage to Coastal, Gibson and MacLeod for the defense of Caywood's action. Pursuant to its findings, the trial court granted a judgment which decreed that there was no coverage afforded Coastal, Gibson, MacLeod or Caywood under the policy in connection with the events of February 3, 1983. Further, the court held that Northbrook had no duty to defend Coastal, Gibson and MacLeod against Caywood's action. Finally, the court ruled that Northbrook could recover all costs and expenses incurred in the investigation and defense of Caywood's action. Coastal, Gibson and MacLeod appeal.

I

The facts of this case are not in dispute. Coastal conducted rescue training programs for public safety agencies and for community colleges. MacLeod and Gibson each owned 50 percent of the capital stock of Coastal.

On February 1, 1983, Coastal commenced instruction on a three-day course entitled "Helicopter Rescue Techniques" at Santa Rosa Junior College. The course was designed to "train on-scene rescue personnel in the proper use of helicopters as rescue tools." Gibson contacted the United States Army at Fort Ord who agreed to provide an aircraft and crew at no charge for the first two days of the course. For the third day of the course, Gibson arranged for Spirit Airways (Spirit) to provide a helicopter and a pilot for two hours at the California Department of Forestry in Belmont. Although Gibson understood that the helicopter and pilot would be provided at a cost of $350 per hour, Spirit did not charge Coastal or the college any sum for its services. Gibson stated that if Spirit had sent an invoice in the amount of $350 per hour, Coastal would have paid such amount and obtained reimbursement from Santa Rosa Junior College.

On February 3, 1983, the day of the accident, the helicopter landed in Belmont as previously arranged. The class was assembled. Andy Anderson (Anderson), the Spirit pilot, and another Spirit employee, climbed out of the helicopter and left the engine operating. Anderson and Gibson discussed what would be done and how much time was available.

Gibson and Gary Kibbee, an independent contractor, acted as instructors on that day. First a rappelling exercise was demonstrated by the instructors and performed by the students. This procedure involved sliding down a rope attached to the helicopter. Next, the "fixed line pickoff" was demonstrated. This procedure involved a helicopter hovering approximately 30 feet off the ground with a rope, the fixed line, attached to the helicopter. Two students would then attach themselves to the rope, one slightly above the other, to practice how a victim and a rescuer can be moved from a hazardous location to a safe location. The army helicopter had been used in performing the exercise on the previous day. However, Caywood and one Thomas Hamilton, two students in the class, had not had the opportunity to perform the exercise and were the first to do so on that day.

With Gibson's assistance, Caywood and Hamilton affixed themselves to the rope. Then the helicopter ascended vertically to an altitude of approximately 40 feet, lifting the two men 10 feet off the ground. The helicopter suddenly veered to the right and Caywood and Hamilton swung in an arc.

The helicopter then made a semicircle, the diameter of which was 75 yards. The helicopter lost approximately one-half of its altitude and Caywood and Hamilton hit the ground. The lawsuit which Caywood filed is the underlying action for which Coastal, Gibson and MacLeod tendered their defense to Northbrook.

## II

Northbrook issued Coastal, Gibson and MacLeod a comprehensive general liability insurance policy on March 12, 1982, which was still in effect at the time of the accident. The policy purported to insure against hazards involved in the "[t]eaching of search & rescue techniques rated as: [s]school-college or university #82210." However, the policy also set forth the following exclusion: "This insurance does not apply: . . . [¶] (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or *aircraft owned or operated by or rented or loaned to any insured,* or [¶] (2) any other automobile or aircraft operated by any person in the course of his employment by any insured . . . ." (Italics added.)

MacLeod obtained the insurance policy through a broker. He provided the broker with Coastal's course curriculum and described to him the type of activities conducted in those courses. MacLeod's understanding of the insurance policy was that the activities in each and every class Coastal conducted would be covered by the policy.

## III

The main issue presented by this appeal is whether the trial court was correct in concluding that the exclusion applied because the helicopter was rented or loaned to Coastal. We find that the trial court's determination was erroneous and therefore, reverse the judgment.

We begin our analysis with the established rule that the construction of an insurance policy is a matter of law where the underlying facts are not in dispute. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123]; *Underwriters Ins. Co.* v. *Purdie* (1983) 145 Cal.App.3d 57, 67 [193 Cal.Rptr. 248].) Furthermore, we are cognizant of the principle that exclusionary clauses in insurance policies are interpreted narrowly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 102.)

As noted above, the relevant portions of the policy herein provided for liability insurance except when an injury arose out of the operation or

use of an aircraft "owned or operated by or rented or loaned to any insured." Neither party argues that Coastal owned or operated the helicopter. Thus, the question narrows to whether there has been a rental or a loan of the helicopter. Civil Code section 1925 defines the rental of personal property as a "contract by which one gives to another the temporary *possession* and use of property, other than money, for reward, and the latter agrees to return the same to the former . . . ." (Italics added.) Our courts have distinguished contracts for services rendered by the operator of a vehicle and a vehicle, in combination. (*Entremont* v. *Whitsell* (1939) 13 Cal.2d 290 [89 P.2d 392]; *Rice Bros., Inc.* v. *Glens Falls Indem. Co.* (1953) 121 Cal.App.2d 206 [263 P.2d 39].) What emerges from these cases is that one of the determinative factors in deciding whether there is a rental agreement is whether the person engaging the services of the operator and the vehicle has possession and control of the vehicle.

A case close to the one herein is *Rice Bros., Inc.* v. *Glens Falls Indem. Co., supra,* 121 Cal.App.2d 206, wherein the Court of Appeal concerned itself with an exclusion for damage to property "rented to" the insured. The insured, Rice Bros., Inc., was involved in the performance of a grading and paving contract. Rice Bros. had an oral agreement with one Holloway that Holloway would provide some of the trucks necessary for the job. The trucks were to be furnished by Holloway "'fully operated and maintained'"; i.e., Rice Bros. was to pay so much for the truck and Holloway was to provide the driver, the gasoline and the repairs. A truck owned by Rice Bros. damaged one of Holloway's trucks and Rice Bros. paid for the necessary repairs. Rice Bros. sought indemnification from Glens Falls under its public liability insurance policy. Glens Falls denied coverage based on the exclusion clause in the policy which provided: "'This policy does not apply . . ., to injury to or damage of property owned by, rented to, in charge of, or transported by the insured.'" (*Id.*, at pp. 206-207.)

The evidence in *Rice Bros.* showed: that Holloway trucks were operated by Holloway's drivers at all times; that only Holloway had the right to discharge the driver of the truck; that if Rice Bros. used the truck in a way Holloway did not like, Holloway could terminate the use of the truck; that the trucks were to be used in doing whatever was necessary on the job, and the superintendent of Rice Bros. was in charge of the work; and that Holloway could do anything he wanted with his trucks but that he would not get paid unless his trucks were working at the job site. (*Id.*, at p. 208.) After considering this evidence, the Court of Appeal held that the damaged truck was not rented to Rice Bros. and, thus, the clause excluding coverage for property "rented to" or "in charge of" the insured did not apply. In arriving at this conclusion, the court noted that "under the contract between [Rice

Bros.] and Holloway the parties did not intend to give, and did not give, to [Rice Bros.] any possession of the Holloway truck, nor any use of that truck apart from the services rendered by the driver and the truck in combination; that respondent could not break up this combination and be left with a right either to the possession or the use of the truck." (*Id.*, at p. 209.)

Also relevant to this appeal is *Entremont* v. *Whitsell, supra,* 13 Cal.2d 290, a case relied upon by the Court of Appeal in *Rice Bros.* In that case, under a contract between the Department of Public Works and Mr. Entremont, it was agreed that he would "rent" three dump trucks with drivers to the department to be used as needed for highway repair work. In deciding the question of whether the agreement constituted a "renting" of the equipment, our Supreme Court distinguished between such an agreement and one merely "calling for the transportation of property by motor vehicle by Entremont." (*Id.*, at p. 295.) The court reasoned that a renting did not occur because possession and control of the trucks and operators never passed to the department under the terms of the contract. It remained with Mr. Entremont.

Similarly, in the instant case, Coastal did not have temporary possession and use of the helicopter within the meaning of the Civil Code and the cited cases. Like the equipment contracts in *Rice Bros.* and *Entremont,* the agreement here was that the helicopter was to be provided with a pilot who had complete control of the aircraft. The parties here could not have intended for Coastal to have possession or use of the helicopter apart from the services rendered by Spirit's pilot Anderson *and* the helicopter, in combination. Coastal could not break up the combination and be left with the helicopter.

Although Gibson provided some direction to Anderson, possession of the helicopter remained with Spirit. If Gibson asked that the exercise be performed in a manner that Anderson thought inappropriate for a helicopter, he would not proceed, and in so doing, he would be acting as an employee under the control of his employer, Spirit. The management of the helicopter remained with Spirit at all times. Coastal had no control over the manner in which Anderson piloted the helicopter. Anderson could have departed with the helicopter at any time. While in so doing, Spirit may have been in breach of the agreement to provide services, the fact remains that it had the power to do so as Anderson was the person solely in control of the helicopter. Spirit was engaged to render a service as part of the training exercise. There was no delivery of possession of the helicopter to Coastal.

Further, it is equally plain that the helicopter was not "loaned" by Spirit to Coastal, within the meaning of the policy exclusion. Our Civil Code's

definition of a loan is similar to its definition of a rental. "A loan for use is a contract by which one gives to another the *temporary possession* and use of personal property, and the latter agrees to return the same thing to him at a future time, without reward for its use." (Civ. Code, § 1884, italics added.) The evidence in the instant case showed that Coastal's agreement with Spirit was for the helicopter and pilot to be provided at $350 per hour. In our view, it is of no consequence that Coastal did not ultimately receive a bill. The initial agreement provided for remuneration. Furthermore, for the reasons previously stated, Coastal never gained possession of the helicopter so there was no loan of the helicopter.

Northbrook places great reliance on the case of *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86 [130 Cal.Rptr. 321, 550 P.2d 593], wherein our Supreme Court held that the furnishing of water conditioner exchange units to customers constituted a lease of tangible personal property, and the income therefrom was taxable within the meaning of the sales and use tax law. In that case, the Supreme Court reasoned that Culligan's customers had the "use" of the unit which was installed in his or her plumbing system. Thus, the customer had dominion and control over the unit. The court concluded the requisite elements of a "hiring," as set forth in Civil Code section 1925, "temporary possession and use," were present. (*Id.*, at p. 95.)

The facts of the instant case differ from *Culligan* in many respects. First, the furnishing of exchange units which condition hard water cannot be compared with the furnishing of a helicopter and pilot. Once the exchange units are installed, they operate on their own without assistance. The helicopter herein had to have an operator, provided by Spirit, in order to function. Here, the pilot had full control of the operation of the helicopter. In *Culligan,* the customer had control over the equipment by activating the units or leaving them dormant. Northbrook's reliance on *Culligan* is misplaced.

### IV

We reject the remaining contention of Coastal, Gibson and MacLeod that they are entitled to attorney fees in the defense of the instant action and the underlying action by Caywood because coverage was unreasonably denied. First, with regard to the defense in the Caywood case, there was no evidence presented that Coastal, Gibson and MacLeod incurred any fees or costs, as Northbrook defended them in this action pursuant to a reservation of rights. Coastal, Gibson and MacLeod are also not entitled to attorney fees in the defense of this declaratory relief action, because they may not

be considered damages in the instant action. In *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 816-817 [210 Cal.Rptr. 211, 693 P.2d 796], our Supreme Court ruled that when an insurer's tortious conduct reasonably compels an insured to incur attorney fees in order to obtain benefits due under the policy, the insurer is liable for such fees. In such an instance, the fees are considered as damages caused by the tort. The court was careful to distinguish between these fees and attorney fees in bringing the tort action itself, and pointed out that the latter are not recoverable. In the instant case, Coastal, Gibson and MacLeod did not bring a tort action against Northbrook seeking to recover expenses incurred in obtaining coverage or benefits under the policy.

The judgment is reversed. Appellants shall be awarded costs for this appeal.

Scott, Acting P. J., and Barry-Deal, J., concurred.