MATTHEW A. MURACH & another *vs.* MASSACHUSETTS BONDING AND INSURANCE COMPANY & others.

Essex. February 4, 1959. — May 8, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Insurance,* Motor vehicle liability insurance.

Statement of the duty owed by the insurer under a policy of motor vehicle liability insurance to the insured in exercising the discretion given to the insurer by the policy respecting settlement of claims made against the insured. [186–187]

In a suit in equity by the insured under a policy of motor vehicle liability insurance against the insurer seeking to hold the insurer liable for failure to settle an action of tort for personal injuries against the insured in which, after a trial resulting in a verdict for the injured person in an amount well within the policy limit and an order for a new trial unless the parties agreed to a substantial additur, there were unsuccessful negotiations for a settlement in an amount within the policy limit and a second trial resulting in a verdict for the injured person in an amount far in excess of the policy limit, evidence respecting the insurer's handling of the matter and dealings with the insured did not show to be plainly wrong a finding by the trial judge that the insurer acted in good faith and without negligence and justified a decree dismissing the bill. [188–189]

BILL IN EQUITY, filed in the Superior Court on June 5, 1957.

The suit was heard by *Good,* J.

*George Karelitz,* (*Norman Brisson* with him,) for the plaintiffs.

*John B. Donohue,* (*John Z. Doherty* with him,) for the defendant Massachusetts Bonding and Insurance Company.

RONAN, J.   The plaintiffs seek to hold their motor vehicle liability insurer for its failure to settle a tort claim which resulted in a verdict against them in an amount substan-

tially in excess of their policy coverage. From a final decree dismissing the bill the plaintiffs appealed.

The claim was by a pedestrian (hereinafter called the claimant) who was struck by a motor vehicle forced into her path when the plaintiffs' agent was unable to prevent the vehicle he was driving from skidding on an icy road. The plaintiffs gave timely notice of the accident to the insurer, which caused an investigation to be made. Eventually the claimant brought suit alleging damages in the amount of $20,000. The applicable policy limit was $10,000. Upon receipt of the summons served upon the insured, counsel for the insurer sent a form letter to the insured which read in part: "In passing we note you have been sued in a sum much in excess of the amount of the policy of insurance which you carry in this company. Therefore, you may, if you so desire, have your personal counsel associate himself in the defense of this action with our attorneys, any expense in this regard to be borne by you personally." The claimant, in answer to an interrogatory, alleged that she had sustained numerous injuries in the accident, among them a fracture of the skull and loss of her sense of smell. Independent counsel of long experience was engaged by the insurer to try the case. He defended on the grounds that the accident was unavoidable because of the icy condition of the road and that the claim was exaggerated. The evidence with respect to damages did not indicate that the claimant's injuries had included a skull fracture. There was a jury verdict in the amount of $4,900. Counsel for the claimant moved for a new trial on the ground that the verdict was inadequate. The trial judge then ordered that there should be a new trial unless within ten days the parties agreed to an additur of $7,500. Until the verdict and order there had been no serious talk relative to settlement: the claimant had indicated a willingness to settle her claim for $15,000 and not less; the insurer had made no offer.

Thereafter the following took place: Counsel for the defence, in notifying the insured of the additur, noted the possibility of a verdict in excess of the policy limit, and sug-

gested the possibility that the insured retain additional personal counsel. The insured replied in effect that they believed the claimant's injuries were feigned and her allegations exaggerated, and that they themselves were, in any event, judgment proof. During the ten day period allowed by the order no attempt was made to settle the case. Sometime prior to the second trial, however, the claimant's attorney offered to settle for $9,300. The offer was not made known to the insured. On the first day of the second trial the insurer made a counter offer of $7,500, which was refused by the claimant. Counsel for the defence testified during the trial of the present suit that this figure was the insurer's best estimate of the settlement value of the case according to its assessment of the factors relating to liability and damages. Evidence was introduced at the second trial that the claimant had sustained a skull fracture in the accident. During his closing argument to the jury, defence counsel admitted liability, thereby narrowing the issue to one of the extent of the claimant's injuries. A motion to increase the ad damnum to $50,000 (which had been filed prior to the first trial) was allowed after the jury returned a verdict which with interest and costs amounted to $29,887.07. No exception was taken. In the instant case, the trial judge found that after the second trial the insured engaged the attorney who had defended in both trials (not the attorney who brought the present suit) to settle for $1,500 to $2,000 and paid him for his work and that they never made any complaint against that attorney..

The policy in its terms prohibits an insured from settling a claim except at his own expense, and provides that ". . . the company shall . . . defend any suit against the insured . . . even if . . . groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Although this language leaves the matter of settlement entirely to the insurer's discretion, its privilege in this respect imports a reciprocal obligation for its exercise. *Abrams .v. Factory Mut. Liab. Ins. Co.* 298 Mass. 141, 145.

*Service Mut. Liab. Ins. Co.* v. *Aronofsky,* 308 Mass. 249, 252.
*Bartlett* v. *Travelers Ins. Co.* 117 Conn. 147, 151. *Douglas* v.
*United States Fid. & Guar. Co.* 81 N. H. 371. *Hilker* v.
*Western Auto. Ins. Co.* 204 Wis. 1, affd. on rehearing, 204
Wis. 12. Keeton, Liability Insurance and Responsibility
for Settlement, 67 Harv. L. Rev. 1136, 1138. Cf. *Long* v.
*Union Indem. Co.* 277 Mass. 428, 430. That obligation is to
act in good faith. *Abrams* v. *Factory Mut. Liab. Ins. Co.*
298 Mass. 141, 145. *Service Mut. Liab. Ins. Co.* v. *Aronofsky,*
308 Mass. 249, 252. For liability to attach "something
more must be shown than [its] failing to make a settlement
which a reasonably prudent person exercising due care
'from the standpoint of the assured' would have made."
*Abrams* v. *Factory Mut. Liab. Ins. Co.* 298 Mass. 141, 145.
To mitigate the danger, however, that the insurer will favor
its own interest to the exclusion of the insured's, good faith
requires that it make the decision (whether to settle a claim
within the limits of the policy or to try the case) as it would
if no policy limit were applicable to the claim. *American
Fid. & Cas. Co.* v. *L. C. Jones Trucking Co.* 321 P. 2d 685,
687 (Okla.). Keeton, Liability Insurance and Responsi-
bility for Settlement, 67 Harv. L. Rev. 1136, 1148. See
*Dumas* v. *Hartford Acc. & Indem. Co.* 94 N. H. 484, 488.
*Cowden* v. *Aetna Cas. & Sur. Co.* 389 Pa. 459, 470. Good
faith also requires that it exercise common prudence to
discover the facts as to liability and damages upon which
an intelligent decision may be based. *Abrams* v. *Factory
Mut. Liab. Ins. Co.* 298 Mass. 141, 143. *Attleboro Mfg. Co.*
v. *Frankfort Marine, Acc. & Plate Glass Ins. Co.* 240 Fed.
573 (1st Cir.). *Hilker* v. *Western Auto. Ins. Co.* 204 Wis. 1,
affd. on rehearing, 204 Wis. 15. See *Damiano* v. *National
Grange Mut. Liab. Co.* 316 Mass. 626, 629; *Salonen* v.
*Paananen,* 320 Mass. 568, 574. The insurer will not be
held to prophesy, *American Cas. Co.* v. *Howard,* 187 F. 2d
322, 328 (4th Cir.); but it will not be excused for indiffer-
ence. *Vanderbilt Univ.* v. *Hartford Acc. & Indem. Co.* 109
F. Supp. 565, affd. sub nom. *Hartford Acc. & Indem. Co.* v.
*Vanderbilt Univ.* 218 F. 2d 818 (6th Cir.).

The trial judge found that the insurer exercised its judgment in the present case in good faith and that it was not negligent. Since the evidence is reported, we may decide the case upon our own consideration and evaluation of the testimony, giving such weight, however, to those findings of the trial judge which reflect his evaluation of the credibility of witnesses as will sustain those findings unless plainly wrong. *Beaudoin* v. *Sinodinos*, 313 Mass. 511, 513. *Barnum* v. *Fay*, 320 Mass. 177, 180. It appears from the record that the insurer caused detailed investigations to be made into both the circumstances of the accident and the facts relative to damages. These investigations tended to corroborate the claimant's contention that she had lost her sense of smell as a result of the accident, but as to the seriousness of her other injuries medical opinion was divided, and the insurer's information was that the claimant had not sustained a fracture of the skull as a result of the accident. With respect to liability, the insurer relied upon the fact that the icy condition of the road at the scene of the accident afforded a plausible defence. It relied also upon the fact that the jury had returned a verdict in the first trial for $4,900 and it hoped for an even better result in the second trial — not an unreasonable hope in the light of information it had with respect to the limited extent of the claimant's injuries. It minimized the importance of the adverse factors, however, chief among which was the additur.

Counsel for the plaintiffs now press their contention that the admission of liability by defence counsel at the second trial is inconsistent with the insurer's appraisal of the settlement value of the case and that therefore its counter offer (of $7,500) was not made in good faith. That admission undoubtedly was intended to narrow the issue to one of damages, a tactic consistent with the position of the defence that the claimant's allegations of injury were greatly exaggerated.

After examining all the evidence, we cannot say that the trial judge was plainly wrong in concluding that the counter offer of $7,500 was made in good faith despite the considerations just mentioned, relied upon by the plaintiffs.

Where a claim is made for an amount greater than the limits of the policy, it is obvious that the insured may be exposed to liability up to the amount of the excess. It is the duty of the insurer to disclose to its insured its adverse interest with respect to the extent of its liability under the policy. Here the insurer fulfilled its duty in this respect by its communication to the insured advising them of the possibility of a verdict in excess of the policy limit and suggesting that they retain personal counsel.

Despite considerations argued by the plaintiffs (and see Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1169), upon the facts of the present case, no more specific communication (directing attention to a possible conflict of interest) was required of the defendant. The record shows that the plaintiffs in the present case were experienced in business and legal matters and not likely to be unaware of the existence of the prospective conflict of interests. They were, furthermore, unconcerned with the possibility that property of theirs might be involved. They had, they said, no equity of substance. They had large business debts. Their property was held in such a way as to be beyond the reach of creditors. It would be unreasonable in these circumstances to hold their insurer to a standard of disclosure designed to protect interests of the insured which they themselves were at pains to convince the insurer they did not have. Nor can the fact of the nondisclosure of the offer of settlement itself be considered in isolation. While that failure may be some evidence of the insurer's lack of good faith, see *Service Mut. Liab. Ins. Co.* v. *Aronofsky*, 308 Mass. 249, 252, in the circumstances, the trial judge would have been justified in concluding that the defendant reasonably believed that the plaintiffs were not interested in being kept informed of the details of settlement negotiations. See *Strode* v. *Commercial Cas. Ins. Co.* 102 F. Supp. 240, 246–247, affd. sub nom. *Commercial Cas. Ins. Co.* v. *Strode*, 202 F. 2d 599 (6th Cir.).

*Final decree affirmed.*