Eugene Dubay et al., Respondents, v Trans-America Insurance Company, Appellant.

Second Department, June 30, 1980

**APPEARANCES OF COUNSEL**

*Babchak, Daly & Lavery (Hugh A. Lavery, Jr.,* of counsel), for appellant.

*FitzMaurice & Pavarini (John P. FitzMaurice* of counsel), for respondents.

**OPINION OF THE COURT**

TITONE, J.

In this action plaintiffs seek to recover the sum of $35,607.20 under two policies of insurance issued by the defendant insurer, Trans-America Insurance Company (Trans-America), to Pal Sheet Metal Co., Inc. (Pal). Recovery of such sum, together with interest, is sought by plaintiffs for damages to their crane, which tipped over while being used in a hoisting operation pursuant to an agreement plaintiffs had with Pal.

At the time of the accident, Pal, a subcontractor, was erecting a metal roof on a building under construction. Pal, obligated under its contract with the builder to unload metal sheets from a truck and then have them hoisted to the area where the roof was being constructed, engaged the services of plaintiffs for that purpose. The plaintiffs allege in their com-

plaint, *inter alia,* that the tipping over of the crane resulted from Pal's negligently informing plaintiffs of the weight of a load being hoisted, that such negligence was within the scope of the two policies, that plaintiffs had recovered a judgment against Pal, which remained unsatisfied, and that defendant Trans-America was obligated to satisfy the judgment. In its answer Trans-America contended, in effect, that under the circumstances the accident was not within the coverage provided under either policy.

In his examination before trial in a related action, the individual plaintiff, Eugene Dubay, operator of the crane at the time of the accident, testified that Pal's owner and he entered into an understanding over the telephone wherein plaintiffs agreed to supply a crane together with an operator and a crew of two men. Although Dubay characterized the agreement as a "rental", he clarified such remark by stating that the normal "rental" agreement, under which the lessee would "rent" the crane and the operator and crew would go on the payroll of the lessee, was not entered into in this instance because Pal did not have a contract with the Operating Engineers' Union. Instead, plaintiffs supplied the operator and the crew and their wages were reflected in the "rental" price of the crane. The invoice subsequently sent by plaintiffs to Pal indicated that it was for "2 days rental." Included in the price were the wages paid to the crew by the plaintiff corporation, Dubay & Sons, Inc.

With respect to the work to be performed on the day the accident occurred, Eugene Dubay also testified at the examination before trial that he, as the crane operator, and his crew, were told by Pal's foreman where the materials to be hoisted were located and where they were to be placed. The employees of Pal were responsible for bundling the materials and hooking two bundles to the crane for each individual hoisting. In addition, Pal's employees gave the operator certain hand signals which indicated when to lift the load, when the load cleared the top of the building, and when it was ready to be lowered onto the roof area of the building under construction. However, as the operator of the crane, Dubay testified that he was at all times in charge of the machine, its operation and controls.

The thrust of the action brought by plaintiffs against Pal and others after the accident, was that the latter were negligent in misinforming the crane operator that the weight of

the load which caused the tipping over of the crane did not exceed 3,600 pounds, whereas it weighed more than that amount, and that the overweight load was the proximate cause of the accident. Pal and the other defendants did not interpose a defense in the action against them.

At the time of the accident, Trans-America had in effect two policies insuring Pal, a general liability policy and an "umbrella" policy. Following receipt of a copy of the complaint served on Pal, Trans-America notified Pal that it was disclaiming coverage under the general liability policy on the basis of the following endorsement thereto which excluded from coverage "Broad Form Property Damage Hazard", which was defined as follows: " 'Broad Form Property Damage Hazard' means property damage to (1) property used by the Insured, or (2) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control; (3) to work performed by or on behalf of the named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith". In its disclaimer letter, Trans-America contended that the property in question (the crane) was damaged while being used by the insured and while in its care, custody or control.

No mention was made in the letter of the "umbrella" policy. That policy, however, contained an endorsement which read: "It is agreed that this Policy shall not apply to liability for injury to or destruction of: (A) leased or rented equipment, or (B) property being installed, erected or worked upon by the Insured, his agents or sub-contractors".

After an inquest in the action against Pal and the other defendants, judgment was entered in favor of plaintiffs in the sum of $35,607.20. The judgment having remained unsatisfied, and following service of the notice of entry on Trans-America, plaintiffs commenced this action to recover under both policies. Trans-America moved for summary judgment on the ground that there was no coverage available to Pal under either policy. Plaintiffs cross-moved for summary judgment claiming that the right of Trans-America to disclaim under the "umbrella" policy was waived by its failure to raise such defense in the earlier action, and that the property in question was not rented by, used by or in the care, custody or control of Pal at the time of the occurrence.

Special Term denied Trans-America's motion and granted

plaintiffs' cross motion. It held that, although the right to disclaim had not been waived, since plaintiffs had not characterized the relationship as a rental prior to Eugene Dubay's examination before trial in the companion action, the facts of the accident brought it without the exclusions contained in both policies. According to Special Term, "[s]ince possession and control of the crane'[s] operation was never in the hands of the insured, the Court must conclude that no true rental agreement ever existed, nor was the damaged property in the care, custody or control of the insured within the commonly understood meaning of those terms."

On appeal three questions are presented for review, to wit: (1) whether summary judgment could be granted; (2) whether the general policy endorsements excluding coverage for property rented by, used by, or within the care, custody or control of the insured were applicable; and (3) whether the endorsement under the "umbrella" policy was waived by the failure of Trans-America to raise it at the time of the original action against its insured.

With respect to the summary judgment aspect, the law is settled that where the terms and conditions of a policy of insurance are clear and unambiguous, the construction of the policy presents questions of law to be determined by the court (*Dwight v Germania Life Ins. Co.,* 103 NY 341). If there is an ambiguity in the terminology used in an insurance policy, and the determination of the intent of the parties depends upon the credibility of extrinsic evidence or a choice among reasonable inferences to be drawn from extrinsic evidence, then such a determination is to be made by a jury. On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law by the court (*Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 172).

In my opinion the terms set forth in the instant policies are clear and unambiguous. There is no dispute as to the intent of Trans-America and Pal at the time they entered into the two contracts of insurance. The only issue is whether the terms as stated in the policies apply to the facts herein, which are likewise not in dispute. Therefore, the interpretation of such terms with respect to the facts is purely a question of law and accordingly this case is a proper one for the granting of summary judgment (see CPLR 3212, subd [b]).

Turning to the second question presented on this appeal,

namely, whether endorsements in both policies excluded coverage in this instance, defendant points out that the "umbrella" policy clearly stated that it did not cover property "leased or rented" by the insured, and that the agreement between Pal and the plaintiffs was characterized by plaintiffs both orally and in writing as a "rental". Therefore, concludes the insurer, Pal "rented" the crane from the plaintiffs and, a fortiori, the "umbrella" policy did not cover the accident in question. I disagree with such conclusion.

The mere fact that an agreement is referred to as a "lease" or "rental" does not transform it into either one. Rather, what is essential is that the court look to the rights and obligations the agreement confers to determine its true nature *(Feder v Caliguira,* 8 NY2d 400; see, also, *Matter of New York World-Tel. Corp. v McGoldrick,* 298 NY 11).

A rental of personal property is a bailment for both parties, and generally is carried out by means of a contract termed a lease (5 NY Jur, Bailment, § 1). A determination as to whether an agreement involving personal property constitutes a lease depends upon the facts involved (see *Telephone Secretarial Serv. v Sherman,* 28 AD2d 1010). *It is the transfer of absolute control and possession of property* at an agreed price which differentiates a lease from other arrangements dealing with property rights *(Feder v Caliguira, supra,* p 404).

In the instant matter, it is clear that at no time did plaintiffs relinquish absolute control and possession to Pal. Plaintfifs' operator was at all times in charge of the controls of the crane, and Pal never acquired physical possession of the crane. The record indicates that had Pal had an agreeent with the union, the crane alone would have been "rented" and Pal would have placed the crew supplied by plaintiffs on its own payroll. However, such did not occur, and concomitantly the crane remained in the possession and physical control of plaintiffs and their employees at all times (see *Insurance Co. of North Amer. v Northwestern Nat. Ins. Co.,* 371 F Supp 550, affd 494 F2d 1192).

Thus, despite the characterization by plaintiff Eugene Dubay, the crane was not "leased or rented" to Pal within the commonly understood meaning of those words, and therefore the exclusion in the "umbrella" policy as to "leased or rented" equipment is not applicable (see *Miller v Continental Ins. Co.,* 40 NY2d 675).

In connection with the exclusion in the general liability

policy as to "property used by the Insured, or * * * in the care, custody or control of the Insured", it must be mentioned at the outset that cases in New York construing clauses of this nature in policies of insurance, have dealt primarily with damages to real property, and have indicated that in order for the exclusion to apply there must be an occupation exclusive of the control of anyone else *(Greater N. Y. Mut. Ins. Co. v Professional Security Bur.,* 61 AD2d 975; *Rex Roofing Co. v Lumber Mut. Cas. Ins. Co. of N. Y.,* 280 App Div 665; *Davis Supply Co. v Newark Ins. Co.,* 60 Misc 2d 946; *Klapper v Hanover Ins. Co.,* 39 Misc 2d 215).

Although the instant matter involves personal property, I do not find the distinction to be that significant. As was stated in *Klapper v Hanover Ins. Co. (supra,* p 216): "Before it can be said that a person was exercising care, custody or control over property insofar as the exclusion clause is concerned, it must be determined what he was doing upon the premises, *and not only whether the property is realty or personalty, but the location, size and other characteristics of the property, and what his interest was in the property."* (Emphasis supplied.)

In *North Amer. Iron & Steel Co. v Isaacson Steel Erectors* (36 AD2d 770, affd 30 NY2d 640), this court was asked to construe a clause which excluded coverage for damage to "property in the care, custody or control of the Insured * * * or property as to which the insured for any purpose is exercising physical control". We found that the policy did not extend coverage for damages which occurred when a steel structure being erected by the insured (a subcontractor) collapsed during the course of the construction, on the basis that the insured and its employees were in actual physical control at the time of the incident. It was also noted, in dicta, that the issue of realty as opposed to personalty was not dispositive, noting that it was unclear whether the damaged property was realty or personalty.

In this matter there is no doubt that the property is personalty. However, we believe, in accordance with the principle referred to in *Klapper v Hanover Ins. Co.* (39 Misc 2d 215, *supra),* that a determination of whether property is being used by, or is in the care, custody or control of an insured, must be based not only on a distinction between personalty and realty, but also on an evaluation of the particular nature of the property itself and the relationship of the insured to that property.

In viewing the facts in the instant matter, it seems clear that the crane was at all times within the physical control and under the direction of the crane operator. The activities engaged in by the insured's employees could not be said to have risen to such level that they usurped the operator's control of the crane. These activities, although they aided in the operation, were but a supportive part of the entire process.

Both parties rely on cases from foreign jurisdictions to buttress their contentions. Each such case suggests that the courts will look to the party exercising the most significant degree of control (either physical or in terms of responsibility) to determine who has care, custody or control of property for purposes of this type of exclusion clause in an insurance policy. (See, e.g., *Monari v Surfside Boat Club,* 469 F2d 9; *Towboats, Inc. v General Equip. & Iron Works,* 280 So 2d 840 [La]; *Phoenix of Hartford v Holloway Corp.,* 268 So 2d 195 [Fla].)

One of the cases that should be particularly noted is *International Derrick & Equip. Co. v Buxbaum* (240 F2d 536). In that matter the court found (p 537) that such an exclusion clause applied where, during the erection of a radio antenna (the damaged property), the insured crane operator "had exclusive control as to the choice of equipment and its use, the timing, and various details incident to the actual erection". Interestingly, *International Derrick (supra)* is almost directly on point in terms of its facts, except that the exclusion was found applicable therein because it was the crane operator who was the insured.

Conceivably, had the crane in this case actually been rented by Pal, the result might differ. However, where, as here, plaintiffs retained possession of the crane and its operation was under the control of plaintiffs' employee, Pal never had the use, care, custody or control of the property necessary to bring it within the exclusion provision. Accordingly, the exclusion in the general liability policy is likewise not applicable in this instance.

Since it has been determined that neither exclusion applies to the matter at bar, this court need not reach the issue of whether the failure to raise the "rental" exclusion in the original action constituted a waiver. However, I agree with Special Term's determination not to apply the waiver rule on the ground that it was not shown by plaintiffs that the

individual plaintiff had ever characterized the relationship between plaintiffs and defendant's insured as a rental agreement prior to his so testifying at the examination before trial in the related case.

The judgment of Special Term granting plaintiffs summary judgment on their cross motion should be affirmed.

MOLLEN, P. J., HOPKINS and MANGANO, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered September 25, 1979, affirmed, with $50 costs and disbursements.