666                                    22 Mass. App. Ct. 666

Crane Service & Equipment Corp. *v.* United States Fidelity & Guaranty Co.

CRANE SERVICE & EQUIPMENT CORP. *vs.* UNITED STATES
FIDELITY AND GUARANTY COMPANY.

Middlesex.    May 13, 1986. — August 20, 1986.

Present: GREANEY, C.J., KAPLAN, & KASS, JJ.

*Contract,* Equipment lease, For services. *Insurance,* Contractor's insurance, Insurer's obligation to defend.

An exclusion clause in a policy of comprehensive general liability insurance written for a general contractor, which excluded coverage for damage to property "rented to," "used by," and "in the care, custody or control of" the insured was inapplicable in an action to reach and apply proceeds of the policy, commenced by the owner of a crane which had been supplied to the insured under an oral agreement for service in connection with certain construction work and which had been damaged during the course of the work, where uncontroverted material facts contained in an affidavit, including the facts that the owner of the crane operated, maintained, and retained control over the machine and its crew at all times, indicated that, despite the crane owner's use of the word "rental" on its invoices, the transaction constituted a service contract rather than an equipment lease, and that the crane was, for purposes of the policy, neither in the custody of the insured, nor "used by" it in the project. [668-669]

An insurer who, under a comprehensive general liability insurance policy written for a general contractor, had disclaimed coverage for damage to a crane on the basis that the crane came within certain policy exclusions, was not, in the circumstances, relieved from its duty to defend its insured against a liability apparently within the effective coverage of the policy. [669-670]

CIVIL ACTION commenced in the Superior Court Department on September 5, 1979.

The case was heard by *John Paul Sullivan,* J., on a motion for summary judgment.

*Mark E. Cohen* for the defendant.
*Mitchell S. King* for the plaintiff.

KASS, J. United States Fidelity & Guaranty Company (USF &G), an insurer under a comprehensive general liability insurance policy written for a general contractor, disclaims coverage for damage to a crane on the basis that the crane came within exclusions for property "rented to," "used by," and "in the care, custody or control of" the insured.[1] On a motion for summary judgment, a judge of the Superior Court decided that the exclusions did not apply and that the owner of the damaged machine, Crane Service & Equipment Corp. (Crane), was entitled to recover damages from USF&G of $127,541.60, plus interest.[2] We affirm.

The uncontroverted material facts come largely from an affidavit of the president of Crane, who apparently made the affidavit with a copy of *Insurance Co. of N. America v. Northwestern Natl. Ins. Co.,* 371 F. Supp. 550 (E.D. Mich. 1973), aff'd., 494 F.2d 1192 (6th Cir. 1974), at his elbow. Those facts are as follows: Crane supplied a Model TM 650 Grove hydraulic truck crane to USF&G's insured, J. L. Caputo Construction Company (Caputo), in September, 1978, for service in connection with a job Caputo was doing in Newburyport. The agreement was verbal. Crane furnished the machine, an oiler, who drove the crane, and an operator, who operated the levers to make lifts. Although acting under the general supervision of Caputo, Crane's operator and oiler retained physical control over the crane at all times. Caputo paid an hourly fee for the crane and its crew. Members of the crew were employees of Crane, which paid their salaries, employment taxes, and provided their workers' compensation insurance. Crane retained control over the hiring and firing of the crew and responsibility for fueling and repairing the crane. At the end of a work day, the operator and oiler secured the crane and held on to the keys. Crane reserved the right to substitute functionally equivalent equipment and crew. When it rendered invoices, Crane was in the habit of referring to "crane rental."

---

[1] The full texts of the exclusions appear in an appendix to this opinion.

[2] The action is one to reach and apply the proceeds of USF&G's insurance policy to satisfy a judgment which Crane had obtained against the general contractor.

1. *Status of the crane under the exclusions.* The broad purpose of the comprehensive general liability insurance policy, so far as it related to property, was to cover property other than that which was Caputo's, i.e., other people's property. The policy exclusions recognize that, for reasons of conserving capital and tax avoidance, businesses frequently rent equipment which they in all respects control and which they operate. A fleet of trucks is a common example. The position of USF&G throughout the case has been that Crane's use of the word "rental" on its invoices is conclusive of the intention of the parties. We think that ignores the on-the-ground facts. Such has been the view of courts in other jurisdictions.

A common thread in the cases is that reference to a contractual arrangement as a "lease" or "rental" does not dictate its true nature. See *Insurance Co. of N. America* v. *Northwestern Natl. Ins. Co.,* 371 F. Supp. at 554 & n.5; *Dubay* v. *Trans-America Ins. Co.,* 75 A.D.2d 312, 317 (N.Y. 1980). See also *Allegheny Intl. Credit Corp.* v. *Bio-Energy of Lincoln, Inc.* 21 Mass. App. Ct. 155, 160-162 & n.12 (1985). Rather, courts look to who has possession and who has control of the property. See *Traders & Gen. Ins. Co.* v. *Edwards,* 216 F.2d 441, 442 (10th Cir. 1954), cert. denied, 348 U.S. 953 (1955) (oil rig); *Insurance Co. of N. America* v. *Northwestern Natl. Ins. Co,. supra* (crane); *State* v. *Steel City Crane Rental, Inc.,* 345 So.2d 1371, 1373 (Ala. 1977) (crane); *Rice Bros.* v. *Glens Falls Indem. Co.,* 121 Cal. App. 2d 206, 209 (1953) (dump trucks); *Dubay* v. *Trans-America Ins. Co.,* 75 A.D.2d at 317 (crane); *Knott* v. *Soltau,* 283 Minn. 25, 29 (1969) (dump truck), which, at 29, collects some of the other cases.

In the case before us, the dispositive factors of possession and control line up decisively in favor of construing the transaction as a service contract rather than an equipment lease. Only Crane's employees drove, operated, fueled, maintained, or repaired the equipment. Those employees kept the keys and were responsible for securing the machine. They could move the machine to another job and substitute equipment which was capable of the same work. Employees of the general contractor could direct where and when the crane should make

lifts but that coordinating function is typical of the relationship between general contractors and subcontractors. Similar facts in the cases cited were resolved against qualification for the "rented to, in the custody of, or used by" exclusion.

The very analysis which determines that Caputo did not rent the crane also determines that the crane did not fall under the "in the custody of" branch of the exclusion. In the absence of any indicia of possession or control, it could hardly be said that Caputo had custody. USF&G's last line of defense is that surely the crane was "used by" Caputo in the construction project. In context, however, "used by" implies those same elements of responsibility for the damaged object which Caputo did not have. See *Employers Mut. Liab. Ins. Co.* v. *Puryear Wood Prod. Co.,* 247 Ark. 673, 679-680 (1969); *Alderman* v. *Hanover Ins. Co.,* 169 Conn. 603, 607 (1975); *Dubay* v. *Trans-America Ins. Co.,* 75 A.D.2d at 318. "[I]f the term 'use' is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However, the term must be considered with regard to the setting in which it is employed." *Great American Indem. Co.* v. *Saltzman,* 213 F.2d 743, 747 (8th Cir. 1954).

2. *Duty to defend.* We think it clear that USF&G had a duty to defend Crane's action against its insured. The duty to defend attaches "if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 146 (1984). See *Vappi & Co.* v. *Aetna Cas. & Sur. Co.,* 348 Mass. 427, 431 (1965). Deciding whether there is a duty to defend involves "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318 (1983). See *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 166-167 (1983). On any but the most constricted reading of the policy, the damage complained of fell within its coverage. As the

cases previously discussed demonstrate, USF&G's theory of exclusion, however unresolved in Massachusetts, has been consistently rejected in jurisdictions where it has been raised. Moreover, USF&G "flatly renounced coverage and liability" without taking any steps to demonstrate that Crane could not establish a claim within the policy. *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 323-324. See *Terrio* v. *McDonough,* 16 Mass. App. Ct. at 169; *Babcock & Wilcox Co.* v. *Parsons Corp.,* 430 F.2d 531, 538-539 (8th Cir. 1970). Having defaulted in its duty to defend, USF&G is bound by the judgment against Caputo. *Miller* v. *United States Fid. & Guar. Co.,* 291 Mass. 445, 448-449 (1935).

There is no merit in USF&G's argument that the factual basis for allowing the motion for summary judgment was inadequate.

*Judgment affirmed.*

APPENDIX.

*Text of Pertinent Exclusions Appearing in the Insurance Policy*

The Property Damage Liability Coverage (including property damage coverage under Part III Contractual Liability) applies to property damage to property in the care, custody, or control of the Insured and to property damage to work performed by or on behalf of the Named Insured, subject to the following additional provisions:

1. The exclusions relating to property damage to (1) property owned, occupied or used by or rented to the Insured or in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control and (2) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, are replaced by the following exclusions (w) and (x):

(w) to property damage
(1) to property owned or occupied by or rented to the Insured or, except with respect to the use of elevators, to property held by the Insured for sale or entrusted to the Insured for storage or safekeeping;
(2) except with respect to liability under a written sidetrack agreement or the use of elevators, to

(a) property while on premises owned by or rented to the Insured for the purpose of having operations performed on such property by or on behalf of the Insured,

(b) tools or equipment while being used by the Insured in performing his operations;

(c) property in the custody of the Insured which is to be installed, erected or used in construction by the Insured,

(d) that particular part of any property, not on premises owned by or rented to the Insured,

   (i) upon which operations are being performed by or on behalf of the Insured at the time of the property damage arising out of such operations, or

   (ii) out of which any property damages arises, or

   (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the Insured.

(x) with respect to the completed operations hazard, to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith.