**Barbara MILAZZO, Plaintiff,**

**v.**

**SENTRY INSURANCE, a Mutual Company, Defendant.**

**Civ. A. No. 86–3653–WD.**

United States District Court,
D. Massachusetts.

Nov. 6, 1987.

Jay A. Canel, P.C., Chicago, Ill., Dante G. Mummolo, Boston, Mass., for plaintiff.

Hunter O'Hanian, Stephen J. Paris, Morrison, Mahoney and Miller, Boston, Mass., for defendant.

## MEMORANDUM

### WOODLOCK, District Judge.

This diversity action is brought against Sentry Insurance, A Mutual Company ("Sentry"), by Barbara Milazzo, a passenger seriously injured in a 1977 automobile accident. Sentry was the liability insurer of Marianne Kane, the owner and driver of the car in which Ms. Milazzo was injured.

Ms. Milazzo seeks damages under the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, and Mass.Gen.L. ch. 176D for Sentry's alleged wrongful refusal to settle her claims and to defend its insured, Ms. Kane's estate, in the underlying tort action that was brought by Ms. Milazzo.

Sentry has moved for summary judgment.

This case is ripe for summary judgment. Although the Plaintiff and Defendant sharply dispute the legal conclusions and implications that follow from the facts presented, there is no genuine dispute about those underlying facts.[1] Indeed, as the Plaintiff concludes in his opposition to the motion for summary judgment, "this case turns on whether Sentry was entitled

to renounce coverage under its guest occupant exclusion and thereby expose its insured to a huge excess judgment." That question in this context is one of law.

## I

The pleadings, affidavits, and exhibits present the undisputed facts. On October 21, 1977, Barbara Milazzo sustained severe head injuries when the car in which she was riding went off the road and overturned. The driver and owner of the car, Marianne Kane, was killed in the accident.

Kane was covered by a standard personal automobile insurance policy issued by Sentry, which provided for coverage of up to $5,000 per person for negligently caused injuries to others and $10,000 per accident. Kane's policy afforded only compulsory bodily injury coverage[2] and explicitly excluded "guest occupants," an exclusion sanctioned by statute, Mass.Gen.L. ch. 90, § 34A. Under § 34A only three categories of riders—"persons responsible for operation of the vehicle with the owner's consent," "passengers for hire" and "employees"—are automatically exempt from the statutory exclusion of guest occupants. Kane declined to choose additional optional coverage for guest riders.

Sentry has repeatedly disclaimed coverage of Milazzo's claims. Sentry's initial disclaimer—a December 22, 1977, denial of coverage on grounds that the compulsory bodily injury benefits of Kane's policy did not extend to Milazzo as a guest occupant —was in response to inquiry by Milazzo's father. Sentry did pay Milazzo personal injury protection (PIP) benefits of $2,000 required by Massachusetts law. At that time Plaintiff did not raise any claim that

---

1. Plaintiff has moved to reconsider the Magistrate's Order of March 19, 1987, a) denying Plaintiff's motion to compel production of 24 documents withheld from Sentry's claims file and b) staying discovery pending resolution of the instant summary judgment motion. I am not inclined to disturb the Magistrate's Order on the basis of the Plaintiff's untimely motion to reconsider. Further, I do not find the Magistrate's Order either clearly erroneous or contrary to law. The Plaintiff has pointed neither the Magistrate nor me to anything—apart from the withheld documents—that would suggest

further discovery is appropriate before a decision is rendered on the summary judgment motion. With respect to the contested documents, despite my conclusion that the Magistrate's Order should be affirmed, I have made my own *in camera* inspection of the documents and find them to be of no assistance to Plaintiff's opposition to the summary judgment motion.

2. Every registrant of a private passenger vehicle is required to maintain a compulsory motor vehicle liability policy under Massachusetts law.

she was exempt from the guest occupant exclusion of Kane's policy as a passenger for hire or as an employee.

Sentry reaffirmed its disclaimer of coverage to the Plaintiff twice (on March 30, 1978 and October 23, 1978) in the course of the following year in response to phone and written inquiries. Milazzo's attorney submitted that the Plaintiff had not been a guest occupant at the time of the accident and was, therefore, entitled to coverage. Sentry refused to settle Milazzo's claims for $5,000 even though Milazzo's attorney suggested that the insurer's refusal to do so exposed it to tort litigation for $1.5 million in damages and additional liability for unfair and deceptive insurance practices under Mass.Gen.L. ch. 176D, § 3.

Milazzo subsequently filed suit against John C. Crowley, the administrator of Kane's estate, to recover damages for her injuries, *Milazzo v. Crowley, Administrator of the Estate of Marianne Kane*, No. 80–1780–N (D.Mass. filed Aug. 8, 1980). Plaintiff's complaint in the *Crowley* action alleged that she was a passenger and not a guest occupant in Kane's vehicle at the time of the accident.[3]

In response to Milazzo's formal invocation of the passenger for hire exemption to the guest occupant exclusion of Kane's policy, Sentry assumed the defense of Kane's estate under a reservation of rights after advising Crowley to retain separate counsel for the estate to defend the action as well. Eleven months later, on July 20, 1981, Sentry formally withdrew from the defense of Kane's estate, having concluded after discovery that Milazzo did not qualify for "passenger for hire" status and was, therefore, excluded from coverage under Kane's policy as a guest occupant.

Two years later, in June of 1983, plaintiff again offered to settle her claim with Sentry for $5,000, this time supporting her claim to passenger status by an affidavit

stating that Milazzo had accompanied Kane at the request of the latter to assist and protect her. Sentry again refused settlement on the grounds that no facts had been shown which made the passenger for hire exemption from guest occupant exclusion applicable to Milazzo.

In August 1983, Plaintiff was allowed a $2.5 million default judgment in *Milazzo v. Crowley*.[4] Because Kane's estate is judgment proof, the Plaintiff has recovered nothing against the estate directly.

Plaintiff thereupon became assignee of all rights of the Kane estate against the insurer. She now brings the present action against Sentry alleging that the insurer's purported refusal to investigate the accident fully, to settle Plaintiff's claims within the policy limits and to defend its insured were unfair and deceptive acts under Mass. Gen.L. ch. 176D, § 3, and, therefore, in violation of ch. 93A.

## II

Milazzo does not contend that Kane's automobile insurance policy provided coverage for her under its express terms. Neither does she now pursue her various past assertions that she qualified for the § 34A passenger for hire exemption from the coverage exclusion of Kane's policy. Instead the gravamen of Milazzo's case is that Sentry wrongfully refused to settle and, subsequently, to defend the underlying tort action against its insured, when it did not and could not know to a certainty whether Milazzo qualified for coverage as either a passenger for hire or an employee.

The validity of Milazzo's claims must be evaluated under Massachusetts statutory provisions, Mass.Gen.L. ch. 176D, §§ 3(1)(f) and (9), which set standards for an insurer's good faith duty to settle or defend liability claims, and Massachusetts case law, which defines the quantum of knowledge an insurer must have before it can

---

3. The complaint states that "Milazzo, was a passanger [sic], and not a guest occupant...." ¶ 5. The technical wording in the statute is "passenger for hire." However, I interpret the Milazzo claim to be an attempt to plead in conformance with the statutory exemption.

4. The record does not indicate that the estate's attorney, George J. Litif, opposed Milazzo's request for summary judgment in the tort action. Litif, who had entered an appearance on behalf of Crowley, appears never to have withdrawn from the case.

disclaim coverage of a claim or claimant as well as the procedures which an insurer must follow when settlement or defense is refused.

Mass.Gen.L. ch. 176D imposes a good faith duty on an insurer to settle and/or defend those insured by it against liability claims. Compliance with the good faith standard of ch. 176D, § 3(1)(f) requires that claims in which liability has become "reasonably clear" must be settled promptly and fairly. Section 3(9)(n) requires that a "reasonable" explanation of any disclaimer of coverage must be provided. The statutory language makes the reasonableness of an insurer's decision the test for compliance. Good faith requires an insurer to consider what a policy holder's "reasonable expectations" are, *Murach v. Massachusetts Bonding and Ins. Co.*, 339 Mass. 184, 158 N.E.2d 338 (1959); *Bond Brothers v. Robinson*, 393 Mass. 546, 551, 471 N.E.2d 1332 (1984), and to conduct a "reasonable investigation based on all available information." *Van Dyke v. St. Paul Fire and Marine Ins. Co.*, 388 Mass. 671, 676, 448 N.E.2d 357 (1983). Under Mass.Gen.L. ch. 93A violations of the two-pronged requirements of ch. 176D are subject to enhanced sanctions. *See, e.g., DiMarzo v. American Mutual Insurance Co.*, 389 Mass. 85, 449 N.E.2d 1189 (1983).

In deciding whether or when they have the duty to defend against "reasonably clear" liability claims insurers must follow the decision-making process outlined by the courts. That process requires that an insurer must determine its duty to defend a third party action against its insured by "matching the complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. 316, 318, 458 N.E.2d 338 (1983). *See also Crane Service & Equipment Corp. v. United States Fidelity & Guaranty Co.*, 22 Mass.App.Ct. 666, 669, 496 N.E.2d 833 (1986); *Whitney v. Continental Ins. Co.*, 595 F.Supp. 939, 947 (D.Mass.1984). Substantively, the insurer must be "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite*, 17 Mass.App.Ct. at 318, 458 N.E. 2d 338.

The insurer's legal obligation to determine its own liability for claims fairly and with care is subject to exacting scrutiny. It is part of that obligation that the insurer cannot "flatly" renounce coverage and liability, *Sterilite*, 17 Mass.App.Ct. at 324, 458 N.E.2d 338; *Crane*, 22 Mass.App.Ct. at 670, 496 N.E.2d 833, but can get clear of its duty only "when it demonstrates with conclusive effect on the third party that as matter of fact—as distinguished from the appearances of the complaint and policy— the third party cannot establish a claim within the insurance." *Sterilite*, 17 Mass. App.Ct. at 323, 458 N.E.2d 338. Breach of an insurer's duty to act in good faith to settle a claim brought against an insured within the policy limits provides a sufficient basis for recovery. *Murach*, 339 Mass. at 187, 158 N.E.2d 338.

### III

Against the background of these standards the validity of Milazzo's allegation that Sentry breached its good faith obligation to its insured turns, first, on whether Sentry had the requisite quantum of knowledge to disclaim coverage of Milazzo as an excluded guest occupant and whether it provided a reasonable and prompt explanation. The second inquiry is whether Sentry's failure to settle Milazzo's claim and defend its insured against that claim constitutes a breach of duty irrespective of the substantive propriety of its initial disclaimer of coverage.

### A. *Reasonableness of Sentry's Disclaimer of Coverage*

Sentry disclaimed coverage for Milazzo's claims on the grounds that she was excluded as a guest occupant under the clear and explicit terms of Kane's policy.

Since Kane's policy did not provide for optional coverage for guest occupants, Milazzo could come within the scope of coverage only if she qualified for the status of "passenger for hire" or "employee" which are exempt from guest occupant coverage exclusion under the applicable provision of Mass.Gen.L. ch. 90, § 34A, which, in pertinent part, excludes:

> Any person, other than an employee of the owner or registrant of a motor vehicle or a person responsible for its operation with the owner's or registrant's express or implied consent, being in or upon, entering or leaving the same, except a passenger for hire in the case of a motor vehicle registered as a taxicab or otherwise for carrying passengers for hire.

To sustain her claim of coverage, *i.e.* exemption from her unquestioned exclusion as a guest occupant under Kane's policy, Plaintiff had to overcome the firm statutory presumption that she was an excluded guest occupant. Conversely, in denying coverage Sentry could rely on a long line of decisions in which Massachusetts courts have narrowly construed the passenger for hire and employee exemptions of § 34A—heeding the legislative concern that the purpose of § 34A is to free owners from compulsory insurance of guest occupants. *Muise v. Century Indem. Co.*, 319 Mass. 172, 65 N.E.2d 98 (1946).

Under the unambiguous language of § 34A any person "inside" an automobile is within the definition of guest occupant. *Joyce v. London & Lancashire Indem. Co.*, 312 Mass. 354, 357, 44 N.E.2d 776, *citing Westgate v. Century Indemn.*, 309 Mass. 412, 35 N.E.2d 218 (1941). "The 'guest occupant' whose injury is excluded from the policy is any person not 'an employee' or a 'passenger for hire.' " *Pezzuolo v. Travelers Ins. Co.*, 338 Mass. 678, 681, 156 N.E.2d 795 (1959). Emphasizing that the statutory exceptions to the guest occupant status of § 34A are narrower than those of the common law, courts have repeatedly held that "one who is not a 'guest' in the common law sense may nevertheless be a 'guest occupant' under the statute [§ 34A]." *Lupinski v. Donnel*, 323 Mass. 489, 491, 82 N.E.2d 793 (1948); *Pezzuolo*, 338 Mass. at 681, 156 N.E.2d 795. Even where an injured Plaintiff is found not to be a guest for negligence liability purposes, that determination does not dispose of that person's exclusion from insurance coverage as a "guest occupant." *Joyce*, 312 Mass. at 358, 44 N.E.2d 776.[5]

In harmony with the broad scope allowed to the guest occupant status of § 34A, Massachusetts courts have narrowly construed the passenger for hire and employee exemption from the statutory coverage exclusion of guest occupants, holding that "[t]his [statutory guest occupant] exclusion is inclusive not only of those who are 'guests' for purposes of determining the liability of the owner or operator of the vehicles but also those who are business invitees." *Pezzuolo*, 338 Mass. at 681, 156 N.E.2d 795, *citing Lupinski*, 323 Mass. 489, 82 N.E.2d 793. In *Saragan v. Bousquet*, 322 Mass. 14, 75 N.E.2d 649 (1947), the Supreme Judicial Court upheld a jury's finding of employee status over subsequent judicial determination to the contrary only where the injured passenger had shown that she had been paid for her work and was on her way home in the employer's car when the accident occurred.

In light of these well established rules, Sentry's determination that Kane's policy did not cover Milazzo's injury claims, because Milazzo was an excluded "guest occupant" under the circumstances of her case, was clearly supported by applicable law and was made in "good faith." It was reasonable for the insurer to conclude that Milazzo's status on the night of the accident did not fall within either the employee

---

**5.** The importance of the legal distinction between "guest occupant" and "non-guest" status was lessened for liability purposes in 1971, when an amendment to Mass.Gen.L. ch. 231, § 85L abolished the common law requirement that in order to recover guest occupants must show gross rather than simple negligence. The amendment allows an injured plaintiff to recover against an automobile operator for ordinary negligence regardless of the plaintiff's status as guest occupant or passenger.

or the passenger for hire exemption of § 34A.

Sentry's conclusion that Milazzo was an excluded guest occupant at the time of the accident and did not qualify for the "passenger for hire" or "employee" exemption from exclusion, was reinforced by Kane's father's description of the trip as a pleasure trip and by police reports which showed that Milazzo and Kane were students en route to Kane's mother's house in a Boston suburb; that the accident occurred at 1:30 a.m.; and that the major contributing cause of the accident was driver error by Kane whose blood alcohol level was measured posthumously at 0.28.

Plaintiff's late blossoming factual assertions were insufficient to sustain her claim of "non-guest" status and to compel the insurer to cover her claim. Those claims, made at various times during the settlement and tort litigation stages underlying the present action, were never fully substantiated by plaintiff. Milazzo's claim to have been a passenger who paid for her share of gasoline and expenses was not pursued; Milazzo's subsequent assertion that she accompanied Kane to protect and assist her could not be substantiated by discovery because of Milazzo's apparently permanent loss of memory. In any event, these bare allegations of "passenger for hire" status, even if proven, could not meet the narrow statutory requirements.

Milazzo points to no facts which should have led to a contrary determination by Sentry, but relies instead on the argument that in the absence of some quantum of knowledge concerning Milazzo's state of mind, Sentry could not make a "good faith" determination that Milazzo's claims were not covered.

Plaintiff's contention that Sentry could not disclaim coverage because the ultimate facts of the arrangement between the two women and the terms under which Milazzo accompanied Kane on the night of the fatal accident were unknown and can never be known cannot form the basis for finding that Sentry acted in bad faith.

First, what Kane and Milazzo intended their relationship to be is immaterial to a determination of their actual status, since subjective intent cannot alter the objective status of the car occupants as a matter of law. Under § 34A, the status of an occupant does not change according to her changing or changed state of mind. *Joyce,* 312 Mass. at 357, 44 N.E.2d 776. Where intent has been held to be relevant to the guest or passenger status of the injured party, it has been for purposes of liability litigation, *see, e.g., Posner v. Minsky,* 353 Mass. 656, 234 N.E.2d 287 (1965), or because the insurance policy in question required that intent to inflict injury must be shown to establish exclusion from policy coverage. *Quincy Mutual Fire Ins. Co. v. Abernathy,* 393 Mass. 81, 469 N.E.2d 797 (1984).

Plaintiff's further argument that the ultimate "unknowability" of the facts and circumstances of the accident must bar an insurer from making an independent and final determination of coverage, is based on the unsupportable premise that the insurer has the entire burden of establishing the facts of non-coverage while a *prima facie* "excluded" plaintiff has to do no more than assert coverage.

The premise that the insurer has the entire burden of proof whether exemptions apply is not a general rule. While there appears to be no clear precedent controlling the allocation of this burden, it has been held "that a plaintiff seeking to recover for breach of a duty or obligation created by a general clause of a contract, which also contains an exception descriptively limiting such duty or obligation, must allege and prove that his cause of action is within the contract and outside the exception." *Murray v. Continental Ins. Co.,* 313 Mass. 557, 563, 48 N.E.2d 145 (1943). The reference in *Sterilite* to the proposition that the third party may "fail[ ] in the end to support any such claim of liability by adequate proof ..." similarly supports allocation of the burden to plaintiff. *Id.* 17 Mass.App.Ct. at 324, 458 N.E. 2d 338. Allocation of the entire burden of proving non-coverage to the insurer would also appear to be inappropriate because the insured or the third party are likely to be in

control of the relevant facts and information with respect to coverage determination.

To impose on an insurer in a case like this an obligation to show complete knowledge of ultimately unknowable facts as a precondition for denial of coverage, would hold it to an impossible burden of perfect proof not now incorporated in standards which demand only the exercise of "common prudence," *Murach*, 339 Mass. at 187, 158 N.E.2d 338, and a "reasonable investigation based on all available information." *Van Dyke*, 388 Mass. at 676, 448 N.E.2d 357. The applicable standard is not infallibility but reasonableness. The standard was met here.

Moreover, allocation to the insurer of the entire burden of showing conclusively all possible facts relating to contested claims coverage would systematically bar the exclusion from coverage of questionable claims made in situations where death or injury are likely to prevent investigators from knowing all of the facts. Thus, facially excluded claims made in cases where costs of coverage are most likely to be very high would command the expenditure of significant insurer resources. Such a reallocation of insurance benefits, if desirable, should be undertaken by the legislature and cannot be accomplished indirectly by court rules holding insurers liable where information is inherently incomplete.

There is finally no rule of construction which would compel an insurer or—ultimately—a court to interpret the provisions of Kane's insurance policy in favor of the insured. To be sure, the general rule of construction is that exclusions from insurance coverage are to be strictly construed. But cases such as *Vappi & Co., Inc. v. Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431, 204 N.E.2d 273 (1965), are inapplicable here, because unlike the policy in that case, Kane's policy was written in language prescribed by statute and controlled by the Division of Insurance rather than the individual insurer. Under these circumstances, the prescription that ambiguities must be resolved against the insurer is without force. *Bilodeau v. Lumbermens Mutual Insurance Co.*, 392 Mass. 537, 541, 467 N.E.2d 137 (1984).

There is simply no question in this case that Sentry was fully justified—both on the facts and under the applicable law—in concluding that Milazzo's claim was not within the scope of Kane's insurance policy.

### B. Reasonableness of Sentry's Notification of Disclaimer

█ The record shows that Sentry communicated its initial decision of non-coverage, subsequent refusal to settle, and its eventual withdrawal from the defense of Milazzo's tort action to its insured promptly and with reasonable clarity.

Specifically, Sentry responded to Milazzo's initial post-accident inquiry concerning coverage by letter setting out the exclusion of guest occupant coverage under Kane's policy and the applicable law. Milazzo did not then contest Sentry's characterization of her status as that of a guest occupant.

Next, Plaintiff's settlement offers clearly were refused, in writing and by phone, in a manner consistent with Defendant's substantive determination on the merits that Milazzo was simply not covered. Sentry's failure to accede to Plaintiff's threat of an unfair practices lawsuit under ch. 176D does not detract from the substantive correctness of the well-founded non-coverage determination on which its refusal to settle rested.

Finally, Sentry's decision first to defend and then to withdraw from the defense of Kane's estate against Milazzo's underlying tort claim was not unreasonable under the circumstances of this case. Plaintiff's Complaint in the underlying action asserted Milazzo's passenger status and was Plaintiff's first formal denial of her "guest occupant" status. In that sense it constituted a new allegation of facts raising a new evaluation of the insurer's obligation to defend. *Vappi & Co., Inc.*, 348 Mass. at 431, 204 N.E.2d 273 (1965). Sentry's willingness to assume the defense against that claim long enough to investigate whether the passenger for hire exemption could be substantiated may be thought to reflect an abundance of caution, but it can hardly be held

to constitute the kind of deliberate or dilatory failure to disclaim coverage which has led courts in some cases to bar an insurer's later disclaimer of liability. *See, e.g., Employers' Liability Assurance Corp., Ltd. v. Vella*, 366 Mass. 651, 657, 321 N.E.2d 910 (1975); *Whitney v. Continental Ins. Co.*, 595 F.Supp. at 943–44.

The facts of this case do not stand for the kind of "prejudicial vacillation" which *Vella* and *Whitney* are meant to discourage in cases where an insurer defends a tort action against its insured without any reservation of rights despite its awareness that the insured has misrepresented the true owner of the automobile involved in the accident, *Vella*, 366 Mass. at 657, 321 N.E.2d 910, or where defendant insurer has acquired information sufficient to warrant disclaimer fourteen months before it actually disclaimed coverage, *Whitney*, 595 F.Supp. at 943–44. No bar to a subsequent disclaimer of liability is warranted here where Sentry's assumption of the defense under reservation of rights was a clearly reluctant departure from its previous disclaimer position, provoked by Plaintiff's formulaic assertion of the passenger exemption in her Complaint.

Notification of the insured that Sentry would withdraw from its defense in *Milazzo v. Crowley* after five months of discovery had revealed no factual basis to support Milazzo's claim of passenger status in March 1981 was not an unreasonable delay. Neither was it unreasonable for Sentry's lawyer to allow Kane's estate four additional months to gear up its own defense before formally withdrawing. Indeed, it would be counterproductive for the courts to penalize an insurer for its tentative and temporary readiness to change its position in response to new allegations set forth by a claimant.

## IV

Plaintiff's contention that Sentry is liable for the $2.5 million dollar default judgment issued against Kane's estate is based on the premise that an insurer's duty to settle or defend its insured is not co-existensive with the scope of the substantive liability of its insurance policy. That premise is supported by decisions which have held that an insurer's contractual obligation to defend an insured against third party claims is "discrete from and of broader scope than the further obligation to indemnify the insured against judgments obtained against it within the policy coverage." *Shapiro v. Public Service Mutual Ins. Co.*, 19 Mass.App.Ct. 648, 653, 477 N.E.2d 146 (1985), *citing Sterilite*, 17 Mass.App.Ct. at 318 n. 4, 458 N.E.2d 338. But such an "expansive view of the duty of defense," *Shapiro v. American Home Assurance Co.*, 616 F.Supp. 906, 913 (D.Mass. 1985), has to date been taken only where "ambiguous circumstances" should have precluded an insurer's determination of non-coverage. *Ibid.* In this case no provisions of the insurance contract provided for the defense of the claims of excluded persons and Sentry's conclusion that Kane's policy excluded Milazzo from coverage did not rest on thin ambiguities. Rather, as set forth above, it was well founded.

The further proposition that the successful assertion of Milazzo's liability claim in the underlying tort action *eo ipso* invalidates Sentry's substantive determination of non-coverage expands the "duty to defend" beyond its intended and logical scope. While it is possible that the eventual determination of an insured's liability at trial may provide the basis for finding that the insurer's initial determination of no liability was unjustified, *Shapiro*, 19 Mass.App.Ct. at 655 and n. 6, 477 N.E.2d 146, such an inference cannot be drawn in this instance where Sentry's disclaimer of coverage for Milazzo is completely unrelated to the issue of Kane's negligence.

"Duty to defend" cases generally arise in two distinct contexts. One set of cases raises questions about the correctness of the insurer's determination as to *who* is covered by a particular policy; the second set of cases raises questions about *what* kind of negligence or losses are covered by the terms of the policy. Most Massachusetts case law on insurer determination of coverage and the corollary duty to defend or settle, deals with the scope of coverage

 

for different types of negligence. It concerns *what* kind of conduct by an insured is covered; it does not deal with the question, *who* is covered. While this distinction does not alter the process by which an insurer must make its decision to defend or not to defend, it cannot but affect how the establishment of an insurer's liability after trial will "relate back" to the "good faith" character of its initial refusal to defend or settle. Although no comprehensive test has been articulated as to when and under what circumstances the outcome of an underlying tort action relates back to the good faith validity of an insurer's initial decision, it is clear, at a minimum, that a finding of negligence liability against an insured after trial can have no bearing on the question of whether the insurer correctly decided to disclaim any coverage of the third party based on the latter's status as an excluded claimant.

That Kane was negligent and that her negligence exposed her estate to substantial liability was apparently not contested; instead Sentry disclaimed any coverage of the claimant on the basis of Milazzo's "guest occupant status." To the extent that Massachusetts law leaves room for the inference that an insurer's initial disclaimer of coverage was not made in good faith when actual liability is subsequently found to exist, the relation back must be limited to cases where a substantive nexus exists between the liability issue decided at trial and the coverage determination of the insurer.

In light of my conclusion that Sentry's disclaimer of coverage was substantively correct and justifiable, and that the process by which the insurer made that determination was not unreasonable under the circumstances, the imposition of a requirement that Sentry should have sought from a court clarification of its duty toward the insured or its liability to the Plaintiff would be unwarranted. To have chosen that course might have been cautious, but no decision in this jurisdiction has held that an insurer must manifest caution in that way. To be sure, resort to a declaratory judgment action would have provided Sentry with a safe harbor, but such an action was not the only way in which to anchor its disclaimer.

By relying on its own determination of disclaimer, Sentry took the risk, not only of a possible liability finding against it, but of the additional prospect of the imposition of sanctions under ch. 93A. In the absence of a legislative imposition on insurers of an absolute duty to defend or, alternatively, a clear command to seek a judicial declaration of rights where coverage and liability are contested, the choice to assume the risk of suffering the consequences of its own independent denial of coverage was the insurer's to make. Certainly the courts should not be in the business of requiring premature resort to litigation when the exposed party is prepared to trust its fortunes to private ordering.

## V

For the reasons set forth above, the Defendant's motion for summary judgment is allowed.

Judgment will enter accordingly.