OPINION OF THE COURT
Katherine A. Moloney, J.
Plaintiffs have sued defendant seeking to recover $6,970, said sum representing the value of plaintiff Christina J. Rousseau’s engagement ring that was either lost or stolen while she was undergoing some medical examinations at the defendant’s place of business. Plaintiffs claim that the defendant failed to safely secure her personal belongings while undergoing tests and thus is liable to the plaintiffs for the value of the lost/stolen ring. The defendant denies liability, arguing that plaintiffs have failed to establish that the item was lost or stolen on account of the defendant’s neglect alone. A trial was held on the matter on May 9, 2011. Plaintiffs were represented by Daniel W. Coffey, Esq. and the defendant was represented by Keith V LaRose, Esq. The court having duly deliberated upon the evidence introduced at trial, hereby finds and determines the matter as follows:
Findings of Fact
On December 1, 2008, Christina Rousseau went to MD Imaging, in Poughkeepsie, New York to undergo a PET scan and a CAT scan. Her husband and son accompanied her. She was instructed not to eat 12-18 hours prior to the test, but there were absolutely no instructions prior to her arrival about leaving her personal belongings behind or not wearing jewelry to the exam. Mrs. Rousseau had undergone PET scans, CAT scans, MRIs, and ultrasounds in the past and thus knew, at the very least, that she should come without bringing any personal belongings with her. However, she had never been told in the past that she could not wear her jewelry during a scan. As such, she arrived wearing her jewelry, including her wedding band and engagement ring. When Mrs. Rousseau signed in for her appointment, no one told her that she would need to remove any of her jewelry. There were no lockers or safes to store her *614 personal belongings. There were no signs about what to do with one’s personal belongings. When the defendant’s technician, Ben Sheeley, met with her to prepare her for the scans, he never told her to remove her jewelry prior to having the scans done. Mrs. Rousseau was directed by Mr. Sheeley to change her clothes in a bathroom and was then instructed by Mr. Sheeley to place her clothes on top of a hamper in the PET scan room. The first time she was told she would have to remove her jewelry was when she was alone and situated on the PET scan machine about to undergo the test. At that time, Mr. Sheeley told her that the jewelry could interfere with the test results and that she would have to remove it. During the trial, Mr. Sheeley explained that the jewelry tends to interfere with the CAT scan more than the PET scan, but that he had her take it off prior to the PET scan. Upon taking her jewelry from her, Mr. Sheeley stated, “Don’t worry. I’ll take care of it.” Unbeknownst to Mrs. Rousseau, Mr. Sheeley placed her jewelry on her clothing atop the hamper in the PET scan room. Other persons had access to this room where she was undergoing her PET scan and where Mr. Sheeley had left her jewelry. Mr. Sheeley never told Mr. Rousseau or Mrs. Rousseau where he had placed her jewelry. He never saw who picked up the clothing where he placed the jewelry either.
After Mrs. Rousseau completed the PET scan, she proceeded to the next room for a CAT scan. Before leaving the PET scan room, Mrs. Rousseau handed her clothing to her husband. Mr. Rousseau first realized that his wife’s jewelry was on top of the clothes when an earring fell out of the pile of clothes onto the ground. The ring was never found despite an extensive search of the facility. The parties stipulated that the value of the ring was $6,970. In short, Mrs. Rousseau handed Mr. Sheeley her jewelry and never saw her engagement ring again and now seeks to recover the value of the ring.
Determination and Conclusions of Law
The plaintiffs’ cause of action rests upon the theory that a bailment was established between the parties. A bailment is defined as
“a delivery of personalty for some particular purpose, or on mere deposit, upon a contract express or implied, that after the purpose has been fulfilled it will be redelivered to the person who delivered it, or otherwise dealt with according to that person’s *615 directions, or kept until it is reclaimed.” (9 NY Jur 2d, Bailments & Chattel Leases § 1, citing Herrington v Verrilli, 151 F Supp 2d 449 [SD NY 2001] [applying New York law]; Ellish v Airport Parking Co. of Am., 42 AD2d 174 [2d Dept 1973], affd 34 NY2d 882 [1974].)
Whether there is a bailment turns upon whether there is a relinquishment of exclusive possession, control, and dominion over the property. (See Dubay v Trans-Am. Ins. Co., 75 AD2d 312 [2d Dept 1980].) It depends on the place, the conditions, and the nature of the transaction, and may even arise from the fact that the thing came into the actual possession and control of a person fortuitously, or by mistake. (Osborn v Cline, 263 NY 434 [1934]; Hutton v Public Stor. Mgt., 177 Misc 2d 540 [App Term, 2d Dept 1998]; Phelps v People, 72 NY 334 [1878]; Schaefer v Grausmall Rest. Corp., 196 AD2d 692 [1st Dept 1993] [restaurant liable on a negligence theory for the loss of patrons’ coats which were stolen]; Pivar v Graduate School of Figurative Art of N.Y. Academy of Art, 290 AD2d 212 [1st Dept 2002].)
Here, plaintiffs have sufficiently established that a bailment was created between Mrs. Rousseau and Mr. Sheeley, the defendant’s employee, when she handed over her jewelry to the technician at his specific direction for the sole purpose of undergoing a PET scan and CAT scan at defendant’s facility. Mrs. Rousseau gave up exclusive possession, control and dominion over her jewelry when she handed it to Mr. Sheeley entrusting him to “take care of it” — as the technician put it. The technician’s warning to her to remove the jewelry so as to ensure accurate test results coupled with his promise that she should “[not] worry” created a contract between them, such that once the exams were completed, the defendant was obliged to redeliver the jewelry to Mrs. Rousseau.
In an action to recover damages based upon a bailee’s negligence, the bailor must establish not only that a bailment relationship existed, but that the bailee failed to exercise the required standard of care in maintaining the goods. (9 NY Jur 2d, Bailments & Chattel Leases § 117, citing Daoust v Palmenteri, 109 AD2d 774 [2d Dept 1985].) In general, if a bailee fails to return a bailor’s property, there is a presumption of liability, and if the property cannot be found, a prima facie case of negligence exists. (Maisel v Gruner & Jahr USA, 89 AD2d 503 [1st Dept 1982]; Hutton v Public Stor. Mgt., 177 Misc 2d 540 [App Term, 2d Dept 1998].) The burden shifts to the bailee to come forward to explain the circumstances of the loss. (I.C.C. *616 Metals v Municipal Warehouse Co., 50 NY2d 657 [1980]; Pavesi v Carollo, 105 AD2d 832 [2d Dept 1984] [plaintiffs automobile was stolen from automobile repair shop].) Even if the bailment is a gratuitous bailment, as is the case here, the failure to return the object bailed establishes a prima facie case of gross negligence, requiring the bailee to come forward with an explanation. (Voorhis v Consolidated Rail Corp., 60 NY2d 878 [1983]; Maisel v Gruner & Jahr USA, 89 AD2d 503, 504 [1st Dept 1982] [“The general rule is that if a bailee fails to return a bailor’s property, there is a presumption of liability, and if the property cannot be found a prima facie case of negligence exists”].) When a bailee is unable to come forward with an adequate explanation for failure to return the property subject to the bailment, the bailee is liable for the loss, but if the bailee provides a sufficient explanation for the loss so as to raise an issue of fact, the bailor must then prove negligence.
Here, the defendant has come forth with no explanation surrounding the circumstances of the lost engagement ring. Defendant seeks to afford part of the blame to Mr. Rousseau, thereby exonerating itself from the loss. This is unpersuasive. Mr. Rousseau testified that his focus was upon his wife’s health that day, as he feared she may have a cancer spot on her lung. Moreover, there is no reasonable view of the evidence to suggest that when he picked up his wife’s clothing he should have known that her jewelry had been placed on top of it, for he never knew that Mr. Sheeley had instructed his wife to take off her jewelry when they were alone. Likewise, he never knew to ask Mr. Sheeley where her jewelry was for Mr. Sheeley never brought this up when he was preparing Mrs. Rousseau for the exam. As such, he certainly could not have known to look on top of her clothing for jewelry he never knew or should have known was removed. Mr. Sheeley took no steps to assure the safe return of the jewelry, for even though Mrs. Rousseau was in the first examination room for approximately 45 minutes and Mr. Rousseau had come in and out of that room where Mr. Sheeley was, Mr. Sheeley not only never handed the jewelry over to him, he never even alerted him to where or how he had “take[n] care of’ her jewelry. Despite having had the opportunity to tell Mr. Rousseau where he left his wife’s jewelry, Mr. Sheeley, by his own admission, never told either one of them what he had done with the jewelry. In so doing, the defendant failed to exercise even slight care in securing the bailed items when he left Mrs. Rousseau’s jewelry (worth thousands of dollars) in an *617 unsecured area on top of a hamper and failed to alert them where he had placed it.
This court finds that plaintiffs have met their burden in establishing that a bailment was created and that the defendant failed to return the bailed goods and failed to provide an adequate explanation for its failure to return the goods.
Therefore, based upon the foregoing, it is now ordered, that judgment is awarded in favor of the plaintiffs in the amount of $6,970.